LAW OFFICE OF SHARON J. BRUNNER
Sharon J. Brunner, Esq. (SBN: 229931)
Email: sharonjbrunner@yahoo.com
14393 Park Avenue, Suite 100
Victorville, CA 92392
Tel: (760) 243-9997
Fax: (760) 843-8155

LAW OFFICE OF JAMES S. TERRELL
James S. Terrell, Esq. (SBN: 170409)
Email:  jim@talktoterrell.com
15411 Anacapa Road
Victorville, CA 92392
Tel: (760) 951-5850
Fax: (760) 952-1085

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **WILLIAM SCHELL MORTON**<br><br>            **Plaintiff,**<br><br>**vs.**<br><br>**COUNTY OF SAN BERNARDINO, DEPUTY KABLUYEN, DEPUTY PETERS, SERGEANT JIM EVANS AND DOES 1-10, INCLUSIVE.**<br>            **Defendants**<br>      Defendants. | Case No. 5:21-cv-00052-JGB-SHK<br>[*Hon. Jesus Bernal*]<br><br>**PLAINTIFF'S OPPOSITION TO COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |

1

## **TABLE OF CONTENTS**

2

3   *TABLE OF CONTENTS*................................................................. ii

4   *MEMORANDUM OF POINTS AND AUTHORITIES* ...........................................1

5   **I.    INTRODUCTION AND BACKGROUND** .........................................1

6          **A.    Relevant Facts Regarding Deputy Kabluyen**................................2

       **Deputy Kabluyen was employed by the San Bernardino County Sheriff's** .....2

7          **B.    Relevant Facts Regarding Defendant Deputy Peters** ...............................2

8          **C.    Relevant Facts Regarding Defendant Dilig Remus** ...........................3

9          **D.    Relevant Facts Regarding Defendant Emily Newton**...............................4

          **E.    Relevant Facts Regarding the Plaintiff**.........................................4

10         **F.    Relevant Facts Regarding San Bernardino County** ...........................5

11  **II.   LEGAL STANDARD**...................................................................5

    **III.  ANALYSIS** ................................................................................6

12  **A.    Plaintiff's Claim for Denial of Medical Care (Kabluyen and Peters)**............6

13         1.    Legal Standard....................................................................6
           2.    The Claim Against Deputy Kabluyen Does Not Fail ...............................7

14         3.    The Claim Against Deputy Peters ...................................................9
           4.    Deputy Kabluyen and Deputy Peters Conduct Caused Foreseeable Harm

15         and Are Not Entitled to Summary Judgment Because Their Action.................10
           5.    Deputy Kabluyen and Deputy Peters Violated Morton's Constitutional

16         Rights and are Not Entitled to Qualified Immunity ...............................11

17  **B.    Plaintiff's Fourth Claim for Deliberate Indifference Against Emily Newton
    and Dilig Remus Succeeds** ........................................................12

18         1.    Legal Standard....................................................................12
           2.    Plaintiff's Claim Against Remus Dilig Succeeds.................................13

19         3.    Plaintiff's Claim Against Emily Newton Succeeds.................................13
           4.    Nurse Newton and Nurse Dilig Are Not entitled to Summary.................14

20         Judgment Because of Intervening Causes ...........................................14
           5.    Nurse Newton and Nurse Dilig are not Entitled to Qualified Immunity...15

21  **C.    Plaintiff's Fifth Claim for Failure to Monitor Against Emily Newton and
    Remus Dilig Succeeds** ...........................................................17

22  **1.    Plaintiff Can Establish Monell Liability Against the County.**........................17

23  **Plaintiff's Monell Claims Are Not Based on Claims That Have Been Dismissed.**17

    **Defendant argues that all of the Monell causes of action must be dismissed
24  because they rely on Plaintiff's First and Second Causes of Action, for false arrest
    an excessive force. That is incorrect.** ...........................................17

25         2.    Plaintiff Is Not Arguing New Monell Claims in His Complaint...............17
           3.    Plaintiff will concede the claim of Ratification.................................18

26  **E. Plaintiff's American with Disability Act (ADA) Claim and Rehabilitation Act
27  (RA) Claim Fail as a Mattery of Law** ...........................................22

    **CONCLUSION** ........................................................................22

28

1

2

# <u>TABLE OF AUTHORITIES</u>

3

<u>Cases</u>

4

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970) ........................................6

5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)........................................6

6

*Bd. Of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997) ..............................20

7

*Bell Atl. Corp.v. Twombly*, 550 U.S.544, 555 (2007) ...............................................17

8

*Castro v. City of Los Angeles,* 833 F.3d 1060, 1071 (9th Cir.2016) ...................13, 18

9

*Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986)........................................................6

10

*Conn v. City of Reno,*591 F.3d 1081, 1101 (9th Cir.2010)......................................8, 10

11

12

*Conn. City of Reno, 572 F.3d 1047 (9th Cir. 2009), vacated in part, 568 F.3d 897 (9th Cirr. 2011)* ...............................................................................................................9

13

*Estate of Cornejo ex rel. solis v. City of Los Angeles,* 618 Fed. Appx. 917, 920 (9th Cir. 2015) .........................................................................................................................7

14

15

*Garcia v. County of Merced,*639 F,3d 1206, 1208 (9th Cir 2011) .......................11, 16

16

*Gordon v. County of Orange,*888 F.3d 1118, 1124-25 (9th Cir. 2018).....................13

17

*Hernandez v. City of San Jose,* 897 F3d. 1125,1132 (9th Cir. 2018)..................11, 15

18

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002)...........................................................12, 16

19

*Hopkins v. Andaya,* 958 F.2d 881, 888 (9th Cir. 1992).................................................6

20

*Kendrick v. Cty of San Diego,* 2018 W 1316618, at *4 (S.D.Cal. 2018) ..................20

21

*Lake Nacimiento Ranch Co. v. San Luis Obispo County 841 F.2d 872 (9th Cir. 1987)*........................................................................................................................6

22

*Lemire v. Cal. Dep't of Corr. & Rehab,* 726 F.3d 1062, 1082 (9th Cir. 2013)....10, 16

23

*McHenry v. Renne,* 84 F3d 1172,1178 (9th Cir 1996) ...............................................18

24

*Monell v. Department of Soc. Svcs*., 436 U.S. 658 (1978) .......................5, 17, 18, 22

25

*Revere v. Massachusetts General Hospital,*463 U.S. 239,245 (1983) ................12, 16

26

*Robinson v. York*, 566 F.3d 817, 825 (9th Cir. 2009)...........................................10, 15

27

*Sandoval v. County of San Diego, 985 F.3d 657, 670 (9th Cir. 2021)*.......9, 12, 16, 19

28

*Tatum v. City and County of San Francisco, 441 F.3d 1090, 1098-99 (9th Cir. 2006)* .................................................................................................................7

*Tsao v. Desert Palace, Inc.,* 698 F.3d 1128, 1143 (9th Cir.2012)..........................18

*United State v. One Parcel of Real Prop.,* 904 F.2d 487, 491-92 (9th Cir. 1990) .......6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    <u>INTRODUCTION AND BACKGROUND</u>

On January 11, 2019, William Schell Morton (hereinafter "Plaintiff") was 49-years old and was experiencing a mental health crisis while living with his mother Marie Adams in Apple Valley, California.  Plaintiff had a history of mental health issues and was diagnosed, in part, with schizophrenia. Plaintiff's mother call 911 to seek help in getting her son transported to a hospital for help with his mental health crisis.  Defendants San Bernardino County Sheriff's Deputies Kabluyen (hereinafter "Deputy Kabluyen") and Deputy Peters (hereinafter "Deputy Peters") arrived at her home.  Plaintiff was taken to the High Desert Center (hereinafter "HDDC") for booking by Defendant Peters. Plaintiff was not taken to a hospital or West Valley Detention Center (hereinafter "WVDC") where medical and mental staff were present on-site.

At booking at High Desert Detention Center (hereinafter "HDDC") Defendant Peters failed to provide vital information to the intake nurse at booking at HDDC pursuant to her duties as a deputy and as required by San Bernardino County policies and procedures.  These initial failures would be the start of multiple individual and system wide failures that would cause Plaintiff to suffer multiple injuries, multiple referrals to emergency rooms and ultimately to him gouging his eye out leaving him permanently blind and disfigured all while in the San Bernardino County Jail, WVDC, in a less than a thirty (30) day period between January 11, 2019, and February 07, 2019.

Defendants Dilig Remus and Emily Newton both nurses employed by the County of San Bernardino had contact with Plaintiff during his time at WVDC during times when Plaintiff exhibited self-harming behavior which was described as suicide or potential suicide attempts by both nurses.  Despite these serious actions and behaviors of Plaintiff and prior concerning behavior contained in the medical

record for Plaintiff neither nurse took actions to ensure that Plaintiff got the medical care (mental health care) he required to include the referral to a psychiatrist for the development of a treatment plan, prescribing of medication and possibly a referral to a mental health facility which could provide the observation and treatment that WVDC could not.

**A.    Relevant Facts Regarding Deputy Kabluyen**

Deputy Kabluyen was employed by the San Bernardino County Sheriff's Department on January 11, 2019, and responded to Marie Adams 911 call for help for Plaintiff (Exh. 1 Decl. Brunner **Kabluyen transcript 15;10-21** ). Despite being shown Canyon Ridge (psychiatric hospital) discharge papers by Marie Adams which informed Deputy Kabluyen about Plaintiff's mental health illness he failed to notify HDDC of this information and he failed to transport Plaintiff to a hospital.

**B.     Relevant Facts Regarding Defendant Deputy Peters**

Deputy Peters was employed by the San Bernardino County Sheriff's Department on January 11, 2019 (Exh. 2 Decl. Brunner **Peters transcript 16; 1-7**). San Bernardino's Sheriff's Dispatch information conveyed to Deputy Peters prior to arriving at the home was that Plaintiff was schizophrenic. (Exh. 2 Decl. Brunner, **Peters transcript 16:11-20).** Marie Adams informed Deputy Peters that Plaintiff needed to be taken to a hospital for his mental illness.  (Exh. 2 Decl. Brunner, **Peters transcript, 30:3-23; 33:16-23**). Deputy Peters also observed Plaintiff's behavior during the initial encounter and described it as catatonic and visualized a cut on Plaintiff's hand. (Exh. 2 Decl. Brunner, **Peters transcript,  16:7-22)**.  Deputy Peters failed to seek medical care for Plaintiff even though she testified that she had taken individuals in the past who were a threat to themselves or others "5150" to hospitals such as Arrowhead Regional Medical Center and Loma Linda University Medical Center (Exh. 2 Decl. Brunner, **Peters transcript, 34:3-25; 35:1-16).** Deputy Peters admitted having been trained on dealing with individuals who had

mental illnesses including schizophrenia during the police academy. (Exh. 2 Decl. Brunner, **Peters transcript, 40:24-25; 41:1-9).**

Most importantly, Deputy Peters failed to notify the Intake Nurse at HDDC of critical and vital information concerning Plaintiff.  Deputy Peters despite being required by San Bernardino County Intake Policy to provide detailed information on an inmate at booking failed to sign the arresting officer section attesting to providing the information to the Intake Nurse (Exh 2 **Peters transcript, 57:16-25**).  Deputy Peters failed to even recall the policy requiring this information (Exh. 2. Decl. Brunner, **Peters transcript, 56:21-25; 57:9-15**).  Deputy Peters testified that she had never been trained on the form "Receiving Screening" and was unfamiliar with the form and was not trained on the Arresting Deputy's requirements to complete the form. (Exh. 2 Decl. Brunner, **Peters transcript, 59:24-25; 60:1-25; 61:1-25; 62:1-25; 63:1-6; 63:17-23; ).** The arresting deputy was required to provide answers to important questions at intake and sign the form. **(**Exh. 3 Decl. Sharon Brunner, COSB00670-COSB00674).  All questions are marked "N/A" which is clearly not accurate for Plaintiff. If Peters had provided the information Plaintiff would have gotten timely medical care at WVDC.

### C. Relevant Facts Regarding Defendant Dilig Remus

Defendant Dilig Remus was a nurse employed by San Bernardino County at WVDC on January 11, 2019, and had contact with Plaintiff at WVDC on January 13, 2019. (Exh. 4 Decl. Brunner, **Remus transcript 14:1-14; 19:14-24; 21:4-13.).** On January 13, 2019, Defendant Remus performed a suicide risk assessment on Plaintiff because he was reported to homicidal and was visualized chasing another inmate at WVDC.  (Exh. 4 Decl. Brunner, **Remus transcript, 21:4-19; 22:22-25; 23:1-25).** Plaintiff was hallucinating on January 13, 2019, as noted by Defendant Remus. (Exh. 4 Decl. Brunner, **Remus transcript, 27:14-18.)** Defendant Remus checked "NO" for a psychiatric referral box on the form. Defendant Remus testified that he was not qualified or allowed to make such a referral as a nurse.  (Exh. 4

Decl. Brunner, **Remus transcript, 29:2-25; 30:1-25; 31:1-25; 32:1-25).**  His testimony and belief were later contradicted by the Person Most Knowledgeable (hereinafter "PMK") for San Bernardino County Mental Health Policies and Procedures. (Exh. 5 Decl. Brunner, **Figueroa transcript, 32:4-18)** Defendant Remus despite having access to Plaintiff's electronic medical record which would have included information about the self-harm attempt at HDDC and his noted prior mental health history of schizophrenia did not refer Plaintiff to a psychiatrist. Defendant Remus simply ignored the seriousness of Plaintiff's condition even though another individual in his position would not have ignored the seriousness and failed to act.  This failure led to a delay in Plaintiff being evaluated by a psychiatrist.

**D.     Relevant Facts Regarding Defendant Emily Newton**

Defendant Emily Newton was a nurse employed by San Bernardino County WVDC on February 03, 2019. (Exh. 6 Decl. Brunner, **Newton transcript 12:2-24.)**. Defendant Newton referred Plaintiff to an emergency room. (Exh. 6 Decl. Brunner, **Newton transcript, 46:15-25.).** The emergency room referral was because Plaintiff was doing cartwheels headfirst into a toilet three times. (Exh. 6 Decl. Brunner, **Newton transcript, 47:1-7.).** Plaintiff suffered a laceration on his face and his left toe. This event was noted to be a suicide attempt by Defendant Newton. (Exh. 6 Decl. Brunner, **Newton transcript, 54:21-25; 62:1-4).** Defendant Newton was aware that Plaintiff suffered from a psychiatric history. (Exh. 6 Decl. Brunner, **Newton transcript, 56:22-25; 57:1-3).**  Defendant Newton was also aware that Plaintiff had suffered a facial laceration previously while at WVDC and was referred to an emergency room on January 30, 2019. (Exh. 6 Decl. Brunner, **Newton transcript 59:5-24).**  Defendant Newton failed to notify any doctors or a psychiatrist of these events involving Plaintiff. (Exh. 6 Decl. Brunner, **Newton transcript 62:9-20; 63:3-25; 64:1-4).**

**E.     Relevant Facts Regarding the Plaintiff**

On January 11, 2019, Plaintiff suffered from several mental illnesses including schizophrenia. On January 11, 2019, Plaintiff was suffering a mental health crisis and needed to be taken to a facility for assistance with his mental health.  Plaintiff's mother called 911 for medical care for her son. Instead of getting Plaintiff to a hospital he was arrested and taken to HDDC for booking.  Deputy Peters failed to provide information concerning what had occurred at the home to the Intake Nurse.  While at WVDC between the dates of January 7, 2019, and February 7, 2019, he immediately exhibited signs of severe mental illness and experienced six self-harming/suicide attempts while in custody, four of which required referral to a local emergency room for treatment.  Plaintiff while seeing multiple medical and mental health staff members only saw a psychiatrist on January 28, 2019, and medication was prescribed on this date some two weeks into his incarceration.  Plaintiff refused his psychotropic medications multiple times. Plaintiff gouged (self-enucleated) his left eye on February 07, 2019.

**F.    Relevant Facts Regarding San Bernardino County**

Plaintiff has identified five unconstitutional customs and practices that he seeks damages under *Monell v. Department of Soc. Svcs*., 436 U.S. 658 (1978)**.**

hich are (1) failing to ensure that San Bernardino County Sheriff's Department deputies provide essential information to intake for arrestees; (2) an unconstitutional custom and practice of not ensuring that inmates are transferred/referred out to facilities which can provide appropriate care when the fail cannot provide such care such as constant observation; (3) failure to provide continuity of care; (4) custom and practice to ignore San Bernardino policy and procedures that mandate daily examinations/visits by a psychiatrist for inmates paced in safety cells at the jail.

**II.    LEGAL STANDARD**

In ruling on a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to

the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*, 841 F.2d 872, 875 (9th Cir. 1987). Even where the basic facts are undisputed, summary judgment should be denied if reasonable minds could differ on the inferences to be drawn from those facts. *Adickes*, 398 U.S. at 158-59; *Lake Nacimiento Ranch Co.*, 841 F.2d at 875. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A factual dispute is "genuine" where "the evidence is such that a reasonable jury could return verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). All reasonable inferences must be drawn in the opposing party's favor both where the underlying facts are undisputed *and* where they are in controversy.  Importantly, even entirely circumstantial evidence suffices to create a triable issue of fact.  *Hopkins v. Andaya,* 958 F.2d 881, 888 (9th Cir. 1992).  The court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.  *United State v. One Parcel of Real Prop.,* 904 F.2d 487, 491-92 (9th Cir. 1990).  Further, Rule 56 must be construed "with due regard" for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried by a jury.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986).  Summary adjudication is a drastic remedy and therefore the legal standard trial courts should act "with caution" in granting summary judgment. *Anderson,* 477 U.S. at 255.

### III.    <u>ANALYSIS</u>

### A.    <u>Plaintiff's Claim for Denial of Medical Care (Kabluyen and Peters)</u>

### 1.    Legal Standard

The actions of police officers are reviewed under the Fourth Amendment.

"Claims of denial of medical care during and immediately following an arrest are analyzed under the Fourth Amendment and its 'objective reasonableness'

standard." *Estate of Adomako, 2018 WL 587146, at \*5 (citing Borges v. City of Eureka, 2017 WL 363212, at \*6 (N.D. Cal. Jan. 25, 2017)); see also Holcomb v. Ramar, 2013 WL 5947621, at \*4 (E.D. Cal. Nov. 4, 2013)*

*(*'[C]laims regarding deficient medical care during and immediately following an arrest are during and immediately following an arrest are governed by the Fourth Amendment").

Here, a reasonable jury could conclude individual Defendants violated the Fourth Amendment by failing to take Plaintiff to the hospital, failing to take Plaintiff to WVDC directly (where there is on-call medical staff), or failing to communicate the seriousness of Plaintiff's case at intake.

Under the Fourth Amendment, Plaintiff must show that the officers' actions were not "objectively reasonable." *Tatum v. City and County of San Francisco, 441 F.3d 1090, 1098-99 (9th Cir. 2006).* While the Ninth Circuit has not established what post-arrest medical care is required to be objectively reasonable, it has stated that officers must "seek necessary medical attention by promptly summoning help or taking the injured arrestee to a hospital." *Estate of Cornejo ex rel. solis v. City of Los Angeles,* 618 Fed. Appx. 917, 920 (9th Cir. 2015).

## 2. The Claim Against Deputy Kabluyen Does Not Fail

The denial of medical care by Deputy Kabluyen and Deputy Peters to Plaintiff are questions of fact for a jury to decide. Here, a reasonable jury could conclude individual Defendants violated the Fourth Amendment by failing to take Plaintiff to a hospital for treatment for his mental illness and his mental health crisis, failing to take Plaintiff to WVDC (where there is on-call medical staff), or failing to communicate the seriousness of Plaintiff's case at intake at HDDC.

When deputies arrived at her home on January 11, 2019, Ms. Adams handed the discharge papers from Ridgecrest Regional Hospital to Deputy Kabluyen indicating Plaintiff was involuntary held for a 5150. Deputies Peters and Kabluyen were aware Mr. Morton had been a danger to himself recently based on that

hospitalization.  After Deputy Kabluyen and Peters arrived at the home, Plaintiff presented to the deputies with a cut hand after hitting the washing machine with a hammer.  Marie Adams advised the deputies that her son Plaintiff was having a mental health crisis.  Ms. Adams indicated to 911 that her son was talking gibberish and not making sense.  Ms. Adams provided detailed information to dispatch concerning Plaintiff's medication "Seroquel" and his behaviors on January 11, 2019.

A reasonable officer would not have been indifferent to the serious need plea of Plaintiff. Here, a reasonable jury could conclude deputies Peters and Kabluyen should have taken Plaintiff to a hospital prior to jail and failing to communicate the serious of Plaintiff's case/situation to medical intake at HDDC. Ms. Adams specifically asked that he be taken to a hospital for his mental health crisis.

The Defendants move for summary judgment because they contend that despite their intentional decision not to take Plaintiff to a hospital and not to relay Plaintiff's critical medical information to the HDDC nurse intake, they did not violate Plaintiff's constitutional rights, because they believed the medical staff would evaluate at the detention center. However, this exact argument has explicitly been rejected by the Court of Appeals in *Conn v. City of Reno,* 591 F.3d 1081, 1101 (9th Cir.2010), which hold that transportation officers must report suicidal attempts and be responsible to report incidents to those who will next be responsible for arrestee custody and care. "Thus, the constitutional right at issue here has been clearly established" *id.* At 1102.

The Defendants made the decision to not take Plaintiff to a hospital despite having information that Plaintiff had engaged in a self-harming event "hitting a washing machine with a hammer" and having mental illness schizophrenia.  At intake Deputy Peters failed to report all of the information she was required to report as the arresting officer to jail intake staff.  The Defendants, Peters and Kabluyen made a decision to disregard the medical emergency and not advise the medical staff of the critical information they obtained from Plaintiff's mother.

-8-

The decision was made that Morton critical medical needs would be ignored. A reasonable officer would have recognized the danger of ignoring a serious medical need. Ms. Adams explained Plaintiff needed to go to the hospital and had he placed at Ridgecrest Regional Hospital for a 5150 recently and received medical attention.  Deputy Peters observed Plaintiff to be "catatonic" on January 11, 2019.

Considered in a light most favorable to the Plaintiff, the evidence indicates a reasonable person in each of the individual position would have known that Morton faced a substantial risk of serious harm. *Sandoval v. County of San Diego, 985 F.3d 657, 670 (9th Cir. 2021) (Quoting Gordon 888 F.3d. at 1125)*

**3.      The Claim Against Deputy Peters**

When Peters placed Morton in a police vehicle he was experiencing a mental health crisis. Plaintiff was kicking the police door and due to this he had his legs restrained (hobbled). Deputy Peters and Kabluyen should have transported Morton to a hospital. *Morton needed medical attention.*

The case is similar to *Conn. City of Reno, 572 F.3d 1047 (9th Cir. 2009), vacated in part, 568 F.3d 897 (9th Cirr. 2011)*

*In Conn,* Police officers witnessed an arrestee who threatened to kill herself and attempted to wrap a seatbelt around her neck while being transported to a detention facility. Id. At 1050-57. Because the officers did not notify jail personnel of what they had seen, the arrestee was taken into custody without being placed on suicide watch shortly after. Id 1051. The Ninth Circuit determined the officers were not entitled to summary judgement claims as they were deliberately indifferent to arrestee's serious need. Id at 1058.

The deputies here, were knew personally knew of Plaintiff's serious mental health issues and the reporting party (mother) was seeking to transport Plaintiff to a hospital.  The responding officers failed to assist Plaintiff and delayed his health care.

**4.     Deputy Kabluyen and Deputy Peters Conduct Caused Foreseeable Harm and Are Not Entitled to Summary Judgment Because Their Action**

The Court next considers whether the alleged deliberate indifference was both an actual and a proximate cause of Plaintiffs' harm. *Castro, 797 F.3d at 667* (citing *Lemire*, 726 F.3d at 1074). This causation analysis applies to both Eighth and Fourteenth Amendment claims. See *Gordon*, 888 F.3d at 1125 (describing the requirements for a pretrial detainee's Fourteenth Amendment medical care claim, including a causation requirement); *Lemire*, 726 F.3d at 1074 (citing Conn, 591 F.3d at 1098-01) (explaining that Eighth Amendment deliberate indifference claims require a showing of both actual and proximate cause). "[P]laintiffs who have already demonstrated a triable issue of fact as to whether prison officials exposed them to a substantial risk of harm, and who actually suffered precisely [that foreseeable harm], will also typically be able to demonstrate a triable issue of fact as to causation." *Lemire*, 726 F.3d at 1080-81 (citing Conn, 591 F.3d at 1098-1101; *White*, 901 F.2d 1501, 1505 (9th Cir. 1990)). Conduct is an actual cause of injury "only if the injury would not have occurred 'but for' that conduct." White, 901 F.2d at 1505 (internal citations omitted). Actual or "but-for" causation is "purely a question of fact." *Robinson v. York*, 566 F.3d 817, 825 (9th Cir. 2009). "Once it is established that the defendant's conduct has in fact been one of the causes of the plaintiff's injury, there remains the question whether the defendant should be legally responsible for the injury"—in other words, whether the defendant's actions were a proximate cause. *White*, 901 F.2d at 1506.

Here, the question of causation should be left to the jury. *Conn,* 591 F.3d at 1098. As in *Conn*, the Court is "satisfied . . . that [Plaintiffs] presented sufficient evidence of actual and proximate causation to defeat summary judgment and give rise to a jury question whether [the nurse defendants] caused [Morgan's] eventual suicide." *Conn*, 591 F.3d at 1098. Regarding actual cause, construing all the evidence in the light most favorable to Plaintiffs, the Court finds that reasonable

jury could conclude that the jail could have prevented Plaintiff's self
enucleation if Deputy Peters and Deputy Kabluyen had transported Plaintiff to a
hospital instead of a jail or directly to WVDC.  A reasonable jury could conclude
that if Deputy Peters had provided all of the necessary information to HDDC intake
nurse at booking of Plaintiff (as required by established San Bernardino County Jail
policies and procedures) a full assessment could have been completed which would
have triggered a timely evaluation by a psychiatrist which would have led to timely
prescription of medication to Plaintiff.  Notably, the *Conn* court rejected the
defendant's argument that the medical screening that occurred after they failed to
report the attempted suicide were an intervening cause, noting "[w]hen medical
examiners have insufficient information about the patient they are diagnosing, they
are like to give an inaccurate diagnosis.  Causation is an issue for the jury.

**5.     Deputy Kabluyen and Deputy Peters Violated Morton's Constitutional
Rights and are Not Entitled to Qualified Immunity**

     "Qualified immunity protects government officers from liability for civil
damages insofar as their conduct does not clearly establish statutory or
constitutional rights of which a reasonable person would have known. *Hernandez v.
City of San Jose,* 897 F3d. 1125,1132 (9th Cir. 2018) "To determine whether an
officer is entitled to qualified immunity, the Court ask[s], in the order [it] choose[s]
whether the alleged misconduct violated a constitutional right and (2) whether the
right was clearly established at the time of the alleged misconduct.id Plaintiff has
established a genuine dispute as to the first prong of qualified immunity, only the
clearly established issue may be at issue. To be clearly established the test is
whether "it would be clear to a reasonable officer that this conduct was unlawful'
given the state of the law when the conduct occurred. *Garcia v. County of
Merced,*639 F,3d 1206, 1208 (9th Cir 2011) the issue is whether a detainee is entitled
to prompt medical care once he or she exhibits deteriorating health. The Supreme
Court and the Ninth Circuit have spoken and answered in the affirmative. *Revere v.*

-11-

*Massachusetts General Hospital,* 463 U.S. 239,245 (1983) Passing on vital and critical medical care information to medical personnel is the conduct of a reasonable officer. *Conn*, 591 F.3d at 1098.

The Ninth Circuit recently addressed the issue of qualified immunity in the context of alleged indifference to a detainee's medical needs in *Sandoval v. County of San Diego*, 985 F.3 657. In that case, the court recognized that it had "never before addressed the specific factual circumstances" at issue. Id. at 680. Nevertheless, the court reasoned that the defendant was "not entitled to qualified immunity simply because the very action in question ha[d] not previously been held unlawful." Id. (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)) (cleaned up). The court then summarized numerous cases in which government officials violated constitutional rights by offering inadequate medical care, stating, "[the rule reflected in these decisions is clear: a prison official who is aware that an inmate is suffering from a serious acute medical condition violates the Constitution when he stands idly by rather than responding with reasonable diligence to treat the condition." Id.

Drawing all inferences in Plaintiff's favor, a jury could conclude that Defendants Kabluyen and Peters each ignored warnings that Plaintiff needed a hospital for psychiatric care. In other words, a triable issue of fact remains as to whether the individual defendants were aware of a "serious acute medical condition" and "[stood] idly by rather than responding with reasonable diligence to treat the condition." Id. Accordingly, granting qualified immunity at the summary judgment stage is improper.

**B.     Plaintiff's Fourth Claim for Deliberate Indifference Against Emily Newton and Dilig Remus Succeeds**

**1.     Legal Standard**

Plaintiff's medical care claim is brought under the due process cause of the 14th Amendment is evaluated under an objective deliberate indifference standard.

*Gordon v. County of Orange,* 888 F.3d 1118, 1124-25 (9th Cir. 2018). The Plaintiff must show "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;(ii) those conditions put the plaintiff the at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate the risk, even though a reasonable official in in the circumstances would have appreciated the high degree of risk involves-making the consequences of the defendant's conduct obvious; and by not taking such measures, the defendant caused the plaintiff's injuries. *Castro v. City of Los Angeles,* 833 F.3d 1060, 1071 (9th Cir.2016)

### 2. Plaintiff's Claim Against Remus Dilig Succeeds

On January 13, 2019, a suicide risk assessment was completed by Defendant Dilig Remus. Defendant Remus checked "NO" on the form which indicated whether the inmate being assessed should be referred to a psychiatrist. Plaintiff was noted to be homicidal on that day and was visualized chasing another inmate. This incident led to a use of force incident, specifically Plaintiff was tased by correctional staff. Plaintiff as noted to have been agitated with impaired judgment, auditory hallucinations and hostility. Despite this and the prior self-harm attempt of January 11, 2019, at HDDC Defendant Dilig did not make the referral to a psychiatrist and testified at his deposition that he was trained that he could not make this referral when performing a suicide risk assessment in the place of mental health staff. This testimony was contradicted by the testimony of the Person Most Knowledgeable "PMK" on WVDC Mental Health Policies and Procedures. The referral to a psychiatrist on January 13, 2019, would have ensured that Plaintiff was evaluated and prescribed the medication he needed for his schizophrenia which would have prevented him from engaging in self-enucleation on February 07, 2019.

### 3. Plaintiff's Claim Against Emily Newton Succeeds

Defendant Emily Newton had contact with Plaintiff at WVDC on several

occasions but most notably on February 3, 2019, when she was monitoring Plaintiff. Defendant Newton referred Plaintiff to a local emergency room as it had been reported to her that Plaintiff was engaging in activities that resulted in harm to himself.  This is the fifth self-harming incident documented in HDDC and WVDC records for Plaintiff.  It was reported to Defendant Newton that Plaintiff had been running and doing three cartwheels into the toilet headfirst causing a laceration to his head and left toe.  Defendant Newton documented this as a suicide attempt and made reference to a January 30, 2019, incident where Plaintiff has also engaged in a self-harm incident or suicide attempt.  Despite this an access to prior self-harm incidents, Defendant Newton failed to ensure that this information was brought to the attention of Mental Health Staff or a psychiatrist at WVDC.

**4.     Nurse Newton and Nurse Dilig Are Not entitled to Summary Judgment Because of Intervening Causes**

The Court next considers whether the alleged deliberate indifference was both an actual and a proximate cause of Plaintiffs' harm. *Castro*, 797 F.3d at 667 (citing *Lemire*, 726 F.3d at 1074). This causation analysis applies to both Eighth and Fourteenth Amendment claims. See *Gordon*, 888 F.3d at 1125 (describing the requirements for a pretrial detainee's Fourteenth Amendment medical care claim, including a causation requirement); *Lemire*, 726 F.3d at 1074 (citing *Conn*, 591 F.3d at 1098-01) (explaining that Eighth Amendment deliberate indifference claims require a showing of both actual and proximate cause). "[P]laintiffs who have already demonstrated a triable issue of fact as to whether prison officials exposed them to a substantial risk of harm, and who actually suffered precisely [that foreseeable harm], will also typically be able to demonstrate a triable issue of fact as to causation." *Lemire*, 726 F.3d at 1080-81 (citing Conn, 591 F.3d at 1098-1101; White, 901 F.2d 1501, 1505 (9th Cir. 1990)). Conduct is an actual cause of injury "only if the injury would not have occurred 'but for' that conduct." *White*, 901 F.2d at 1505 (internal citations omitted). Actual or "but-for" causation

is "purely a question of fact." *Robinson v. York*, 566 F.3d 817, 825 (9th Cir. 2009). "Once it is established that the defendant's conduct has in fact been one of the causes of the plaintiff's injury, there remains the question whether the defendant should be legally responsible for the injury"—in other words, whether the defendant's actions were a proximate cause. *White*, 901 F.2d at 1506.

**Causation:**

Here, the question of causation should be left to the jury. *Conn*, 591 F.3d at 1098. As in *Conn*, the Court is "satisfied . . . that [Plaintiffs] presented sufficient evidence of actual and proximate causation to defeat summary judgment and give rise to a jury question **whether** [the nurse defendants] caused [Morgan's] eventual suicide." *Conn*, 591 F.3d at 1098. Regarding actual cause, construing all the evidence in the light most favorable to Plaintiffs, the Court finds that reasonable jury could conclude that the jail could have prevented Morton's self-enucleation if the nurses had taken action in performing thorough assessments and referred Plaintiff to mental health professional or a psychiatrist after appreciating the serious risk that Plaintiff was facing in light of the entire medical record. It was clear that Plaintiff's condition was deterioration and the observation he was under at WVDC was not preventing the self-harm injuries and suicide attempts he was engaging in between January 11, 2019, and February 07. 2019.

**5.    Nurse Newton and Nurse Dilig are not Entitled to Qualified Immunity**

"Qualified immunity protects government officers from liability for civil damages insofar as their conduct does not clearly establish statutory or constitutional rights of which a reasonable person would have known. *Hernandez v. City of San Jose*, 897 F3d. 1125,1132 (9th Cir. 2018) "To determine whether an officer is entitled to qualified immunity, the Court ask[s], in the order [it] choose[s] whether the alleged misconduct violated a constitutional right and (2) whether the right was clearly established at the time of the alleged misconduct.id Plaintiff has established a genuine dispute as to the first prong of qualified immunity, only the

clearly established issue may be at issue. To be clearly established the test is whether "it would be clear to a reasonable officer that this conduct was unlawful' given the state of the law when the conduct occurred. *Garcia v. County of Merced,* 639 F,3d 1206, 1208 (9th Cir 2011) the issue is whether a detainee is entitled to prompt medical care once he or she exhibits deteriorating health. The Supreme Court and the Ninth Circuit have spoken and answered in the affirmative. *Revere v. Massachusetts General Hospital,* 463 U.S. 239,245 (1983) Passing on vital and critical medical care information to medical personnel is the conduct of a reasonable officer. Conn, 591 F.3d at 1098.  The Ninth Circuit recently addressed the issue of qualified immunity in the context of alleged indifference to a detainee's medical needs in *Sandoval v. County of San Diego*, 985 F.3 657. In that case, the court recognized that it had "never before addressed the immunity, [the Court specific factual circumstances" at issue. Id. at 680. Nevertheless, the court reasoned that the defendant was "not entitled to qualified immunity simply because the very action in question ha[d] not previously been held unlawful." Id. (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)) (cleaned up). *Sandoval (*citing to *Lemire v. Cal. Dep't of Corr. & Rehab,* 726 F.3d 1062, 1082 (9th Cir. 2013) "failing to provide …life saving measures to an inmate in obvious need can provide the basis for liability 1983 for deliberate indifference."  The court then summarized numerous cases in which government officials violated constitutional rights by offering inadequate medical care, stating, "[the rule reflected in these decisions is clear: a prison official who is aware that an inmate is suffering from a serious acute medical condition violates the Constitution when he stands idly by rather than responding with reasonable diligence to treat the condition." Id.

Drawing all inferences in Plaintiffs' favor, a jury could conclude that Kabluyen,Peters, Newton, Dilig, and Azizi each ignored warnings that Plaintiff needed psychiatric care. In other words, a triable issue of fact remains as to whether the Individual Defendants were aware of a "serious acute medical condition" and

"st[ood] idly by rather than responding with reasonable diligence to treat the condition." Id. Accordingly, granting qualified immunity at the summary judgment stage is improper.

## C.      Plaintiff's Fifth Claim for Failure to Monitor Against Emily Newton and Remus Dilig Succeeds

Defendants argue that Plaintiff's Fifth cause of action for failure to monitor fails. As noted herein the Plaintiff alleges and argues that Defendant Remus and Newton were deliberately indifferent as noted herein. Defendants Remus and Newton knew that Plaintiff was continuously harming himself, needed medication and a professional mental health evaluation as outlined herein.

### 1.   Plaintiff Can Establish Monell Liability Against the County.

**Plaintiff's Monell Claims Are Not Based on Claims That Have Been Dismissed**

Defendant argues that all of the *Monell* causes of action must be dismissed because they rely on Plaintiff's First and Second Causes of Action, for false arrest an excessive force. That is incorrect.

The Third Causes of Action claim in the second amended Complaint filed by the Plaintiff is for Denial of Medical Care by both named defendants.

### 2.  Plaintiff Is Not Arguing New Monell Claims in His Complaint

The Plaintiff respectfully respects the Court take Judicial Notice to the Plaintiff's Second Amended Complaint, Dkt. 29, paragraphs 38-52; and paragraph 159 (a)-(j), and lastly paragraph 161. The Complaint listed the unconstitutional custom and practice along with failure to train.  Whether a claim is new is determined by looking to Rule 8's 'liberal pleading standard." *Rainer v. Fun Pimps Ent. LLC,*3:22-cv-05718-TMC, 2024 WL 1179140, at *4 (W.D. Wash. Mar. 19, 2024) (citing, inter Alia, *Pickem v. Pier Imports (U.S.), Inc.* 457 F.3d 963, 969 ((th Cir. 2006).  Under Rule 8, the statement of the claim need only give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests*." Bell Atl. Corp*.v. *Twombly*, 550 U.S.544, 555 (2007). In making the determination, the courts look to

the allegations rather than the label the plaintiff provides in the complaint. *McHenry v. Renne,* 84 F3d 1172,1178 (9th Cir 1996).

Plaintiff requested and took the deposition of the PMK for San Bernardino County on Mental Health policies and procedures for WVDC. The Defendants were put on notice of Plaintiff's claims through this deposition as well as the medical expert opinions provided by Plaintiff's expert, Dr. Jeffrey Metzner.

There are no surprises or new claims being presented.

**3. Plaintiff will concede the claim of Ratification**

**4. Plaintiff Can Establish <u>Monell</u> Liability Under An Unconstitutional Custom and Practice and Failure to Train Theory.**

There are triable issues of fact whether the County of San Bernardino should be held liable for its deliberate indifference to prisoners' constitutional rights in its custom and practice and their failure to train personnel.

Municipalities are liable for violations of civil rights under Section 1983 if such violations result from the execution of a government's policy or custom. To establish entity liability, a plaintiff may show a "policy of inaction or omissions, "such as a failure to implement procedural safeguards to prevent constitutional violations." *Tsao v. Desert Palace, Inc.,* 698 F.3d 1128, 1143 (9th Cir.2012). The Plaintiff must show (1) a municipal policy or custom of inaction or omission, (2) "a direct causal link between [that] policy or custom and the allege constitutional deprivation, "and (3) the policy or custom "was adhered to with deliberate indifference to the constitutional rights of [the detention facility's] inhabitants." *Castro v. County of Los Angeles,* 833 F.3d 1060,1075-76 (9th Cir.2016).

Plaintiff identifies four policies or customs which he contends give a rise to the County's liability under *Monell*: (1) failing to ensure that the deputies conducted a health screening at the jail intake;(2) Custom and practice of not transporting inmates to facility that can provide continuous monitoring;(3) Failure to provide continuity of care;(4) Custom and practice to ignore San Bernardino policy that compels a daily psychiatrist examination for inmates confined to a safety cell.

The County of San Bernardino has been on notice that its policy of inaction has amounted to deliberate indifference. *City of Canton v. Harris*, 489 U.S. 378, 395 (1989). See *Sandoval v. City of San Diego,* 985 F.3d 657, 682-683 (9th Cir. 2021) ("To establish deliberate indifference, Plaintiff must prove that the County had actual or constructive knowledge that the failure to implement protocols necessary to ensure that nurses knew when inmates in MOC1 required medical care was "substantially certain" to result in inmates failing to receive the proper treatment, creating a likelihood of serious injury or death."). In *Sandoval*. The court found that the plaintiff had "put forward sufficient circumstantial evidence of the County's knowledge" because "a jury could infer from the more rigorous policies the County put in place for the sobering and safety cells that it was aware of the importance of ensuring that the nursing staff knew which inmates required medical treatment or observation." *Id.* At 683.

## A. Unconstitutional Health Screening Failure/Intake Screening Process

It is the policy and procedure of the San Bernardino County Jail to ensure each arrestee undergoes a medical screening at booking in the jail intake which includes the arresting deputy providing information to five critical questions to the intake nurse. The arresting deputy is also required to sign a form attesting to the accuracy of the information and that the process was completed. Defendant Peters had knowledge that Plaintiff suffered from a mental health crisis and that the origin of the call to 911 was to transport Plaintiff to hospital. Defendant Peters also had knowledge that Plaintiff had been recently released from Canyon Regional Hospital on a 5150 hold for self-harm. The nurse at the HDDC was unaware of Morton's current condition of and all of the aspects surrounding Plaintiff's arrest and behavior on January 11, 2019. Almost immediately at HDDC Plaintiff attempted to hurt himself and was placed in the "restraining chair." Defendant Peters was aware of Plaintiff's severe condition and medical history but failed to pass on this vital

information.  This information being provided to the jail would have ensured that Plaintiff received timely psychiatric care and times psychotropic medication and prevented the self-harm he suffered on February 07, 2019.  Defendant Peters as noted above testified that she was never trained on the process and was unfamiliar with the process in her deposition.  Additionally, Plaintiff can establish a pattern of preventable harm to inmates that the County needed to implement a policy, and train its employees, to relay critical medical information to jail medical staff based on circumstances that lead to the death of Henry Simmons, Betty Lozano, Joshua Pitts, David Librenz and Billy Enyart.  Each of these individuals died in custody because material information was not relayed to the jail medical staff by arresting deputies. (Brunner Decl., generally.)

Regardless of the above, Plaintiff can establish *Monell* liability based upon "single incident" liability.   A plaintiff may succeed in providing a failure to train claim without showing a pattern where "a violation of federal rights maybe highly predictable consequence of a failure to equip [the employees] with the specific tools to handle reoccurring situations." *Bd. Of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997); see also *Kendrick v. Cty of San Diego,* 2018 W 1316618, at *4 (S.D.Cal. 2018) (finding single incident liability based on a foreseeable need for additional training in dealing with individuals in the mental health crusades.). Here, it is obvious that ignoring critical medical information as Deputy Peters did would lead to serious injury.

## B.    Unconstitutional Custom to Not Transport Patient to Available Services

The County of San Bernardino Sheriff's Department has a policy that supports transporting inmates/patients to other facilities when the jail cannot provide that necessary level care at the jail. Specifically, WVDC could not provide continuous monitoring or observation. The custom and practice are to ignore this service and not transport a patient in need to other facilities.  While this exists in

their policies and procedures (Exh. 7 Decl. Brunner, **Azizi deposition 121:20-25; 122:1-25; 123:1-18; 124:1-7).** Dr. Azizi testified he could not recall a time an inmate was transferred out of WVDC although he indicated "but it will happen".

**C.    Unconstitutional Custom and Practice of the County to not provide Continuity of Care to Inmates**

Plaintiff's expert, Dr. Jeffrey Metzner, has opined that the County does not provide continuity of care to Plaintiff despite a policy and procedure of the County that would dictate this for inmates. The County has a policy and procedure "Mental Health Screening, Assessment, and Evaluation" Policy #311.2 which requires the requirement of "Development and implementation of an overall treatment plan, including….." (Exh. 8 Decl. Brunner, **Metzner transcript, 181:23-25; 182:1-25; 183:1-11**).

**D. The County has an Unconstitutional Custom and Practice to not follow their Policies and Procedures Regarding Daily Psychiatry Visits to an Inmate in the Safety Cell**

The PMK testified that she did not believe that a psychiatrist had to conduct a daily visit with an inmate who was confined to the safety cell initially and attempted to testify that clinical seclusion was the trigger point when daily psychiatric visits were necessary but later conceded that Policy and Procedure #311 did require daily psychiatric visits for an inmate in a safety cell which Plaintiff did not have during his time in a safety cell at WVDC.  If the PMK for the County is confused about the Policies and Procedures, it is evident that the jail has failed to train on this issue and has an Unconstitutional Custom and Practice to interpret daily psychiatry visits for an inmate in a safety cell as only necessary if "clinical seclusion" is also present. Dr. Metzner has testified that a safety cell is clinical section. (Exh.  8 Decl. Brunner, **Figueroa transcript 46:1-25; 47:1-25; 48:1-25; 56:1-25; 57:1-25; 58:1-12; Metzner transcript 194:15-25; 195:1-25; 47:1-25; 48:1-25.)**

**E. Plaintiff's American with Disability Act (ADA) Claim and Rehabilitation Act (RA) Claim Fail as a Mattery of Law**

Plaintiff concedes this cause of action.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully request the Court deny Defendants' Motion except *Monell* Ratification theory Plaintiff's cause of action number 6 and Plaintiff's Cause of Action for ADA number 9 and 10.

DATED:  October 15, 2024

                        LAW OFFICES OF JAMES S. TERRELL
                        LAW OFFICES OF SHARON J. BRUNNER


                        By_____*/s/ James S. Terrell*_____
                          James S. Terrell
                          Sharon J. Brunner

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,950 words, which complies with the word limit of L.R. 11-6.1.

DATED:  October 15, 2024

LAW OFFICES OF JAMES S. TERRELL
LAW OFFICES OF SHARON J. BRUNNER


By_____*/s/ James S. Terrell*_____
James S. Terrell
Sharon J. Brunner