LAW OFFICE OF SHARON J. BRUNNER
Sharon J. Brunner, Esq. (SBN 229931)
Email: sharonjbrunner@yahoo.com
14393 Park Avenue, Suite 100
Victorville, CA 92392
Tel: (760) 243-9997; Fax: (760) 843-8155

LAW OFFICE OF JAMES S. TERRELL
James S. Terrell, Esq. (SBN 170409)
Email: jim@talktoterrell.com
15411 Anacapa Road
Victorville, CA 92392
Tel: (760) 951-5850; Fax: (760) 952-1085
Attorneys for William Schell Morton

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM SCHELL MORTON<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN BERNARDINO, DEPUTY KABLUYEN, DEPUTY PETERS, SERGEANT JIM EVANS, and DOES 1-10, inclusive<br><br>Defendants | Case No. 5:21-cv-00052-JGB-SHK<br><br>*[Hon. Jesus G. Bernal]*<br><br>PLAINTIFF'S SEPARATE STATEMENT OF CONTROVERTED FACTS AND ADDITIONAL UNCONTROVERTED MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT.<br><br>[Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgement; Declaration of Sharon J. Brunner(with Exhibits);Proposed Order; *filed concurrently herewith*] |

| Def.'s SUF No | Defendant's SUF No. | Defendant's Evidence | Plaintiff's Response |
|---|---|---|---|
| 1 | On January 11, 2019, Deputy Kabluyen responded to Plaintiff's residence for a call for service, and acted as back up for Deputy Peters. | Exhibit A - Kabluyen Deposition at 35:3-5. (Johnson Dec. ¶3, ¶15) | Undisputed |
| 2 | After Plaintiff was arrested and placed into Deputy Peters' vehicle, Deputy Kabluyen left the scene and had no further contact with Plaintiff after leaving the scene on January 11, 2019. | Exhibit A - Kabluyen Deposition at 33:23-34:2, 34:20-22. (Johnson Dec. ¶3, ¶15) | Undisputed |
| 3 | When confronted with what they believed was proof of his alcohol consumption and abuse, William Enyart denied consuming alcohol and denied ownership of the alcohol bottles, which his family had located in his bedroom. | Exhibit B – Morton Deposition Vol. II at 175:4-176:22, 178:1-21, 184:16-25. (Johnson Dec. ¶4, ¶15) | Undisputed |

| 4 | Plaintiff had no injuries from his interaction with Deputy Kabluyen. | E xhibit A - Kabluyen Deposition at 33:23-34:2, 34:20-22.(Johnson Dec. ¶3, ¶15) Exhibit J – Receiving Screening. (Johnson Dec. ¶12, ¶15) | **Undispiuted** |
|---|---|---|---|
| 5 | Deputy Kabluyen had no control or influence over the conditions of Plaintiff's confinement while Plaintiff was at HDDC. | Exhibit A - Kabluyen Deposition at 33:23-34:2, 34:20-22. (Johnson Dec. ¶3, ¶15) | Undisputed |
| 6 | Deputy Kabluyen had no control or influence over Plaintiff's transfer from the HDDC to the West Valley Detention Center (WVDC) on January 11, 2019. | Exhibit A - Kabluyen Deposition at 33:23-34:2, 34:20-22. (Johnson Dec. ¶3, ¶15) Exhibit H – Transfer Report at "ASSIGNMENT/ARRIVAL". (Johnson Dec. ¶10, ¶15) | Undisputed |
| 7 | Deputy Kabluyen had no control or influence over the conditions of Plaintiff's confinement while Plaintiff was at WVDC. | Exhibit A - Kabluyen Deposition at 33:23-34:2, 34:20-22. (Johnson Dec. ¶3, ¶15) Exhibit H – Transfer Report at "ASSIGNMENT/ARRIVAL". (Johnson Dec. ¶10, ¶15) | Undisputed |

| 8 | Deputy Kabluyen was not present when Plaintiff removed his own eye on February 7, 2019. | Exhibit A - Kabluyen Deposition at 33:23-34:2, 34:20-22. (Johnson Dec. ¶3, ¶15) Exhibit B – Morton Deposition Vol. II at 175:4-176:22, 178:1-21, 184:16-25. (Johnson Dec. ¶4, ¶15) | Undisputed |
|---|---|---|---|
| 9 | Deputy Kabluyen had no way of knowing Plaintiff was going to remove his own eye on February 7, 2019. | Exhibit A - Kabluyen Deposition at 33:23-34:2, 34:20-22. remove his own eye on February 7,(Johnson Dec. ¶3, ¶15)  Exhibit B – Morton Deposition Vol. II at 175:4-176:22, 178:1-21, 184:16-25. (Johnson Dec. ¶4, ¶15)  Exhibit C – Morton Deposition Vol. III at 14:15-15:20, 58:12-59:21, 60:23-1, 69:8-16. (Johnson Dec. ¶5, ¶15) | Undisputed |
| 10 | On January 11, 2019, Deputy Peters responded to Plaintiff's residence for a call for service, and placed him under arrest. | Exhibit D – Peters Deposition at 32:4-10, 49:1-4, 55:5-11. residence for a call for service, and     (Johnson Dec. ¶6, ¶15) | Undisputed |

| 11 | Deputy Peters booked Plaintiff into the HDDC on January 11, 2019 at approximately 1:54 a.m. | Exhibit D – Peters Deposition at 32:4-10, 49:1-4, 55:5-11. (Johnson Dec. ¶6, ¶15)

Exhibit J – Receiving Screening. (Johnson Dec. ¶12, ¶15) | Disputed |
| 12 | Deputy Peters had no contact with Plaintiff after booking him into the HDDC on January 11, 2019. | Exhibit D – Peters Deposition at 32:4-10, 49:1-4, 55:5-11. (Johnson Dec. ¶6, ¶15) | **Undisputed** |
| 13 | Plaintiff had no injuries from his interaction with Deputy Peters. | Exhibit B – Morton Deposition Vol. II at 175:19-176:22, 178:1-4, 184:16-185:4. (Johnson Dec. ¶6, ¶15) | Undisputed |

| 14 | Deputy Peters had no control or influence over the conditions of Plaintiff's confinement while Plaintiff was at HDDC. | Exhibit D – Peters Deposition at 32:4-10, 49:1-4, 55:5-11. (Johnson Dec. ¶6, ¶15) | Disputed – Exhibit 2 of Declaration of Sharon J. Brunner at 57:16-25  Deputy Peters did not complete the receiving screening form.  Exhibit 3 of Declaration of Sharon J. Brunner at 57:16-25 |
| 15 | Deputy Peters had no control or influence over Plaintiff's transfer from the HDDC to the WVDC on January 11, 2019. | Exhibit D – Peters Deposition at 32:4-10, 49:1-4, 55:5-11. (Johnson Dec. ¶6, ¶15) Exhibit H – Transfer Report at "ASSIGNMENT/ARRIVAL". (Johnson Dec. ¶10, ¶15) | Undisputed |

| 16 | Deputy Peters had no control or influence over the conditions of Plaintiff's confinement while Plaintiff was at WVDC. | Exhibit D – Peters Deposition at 32:4-10, 49:1-4, 55:5-11. (Johnson Dec. ¶6, ¶15) Exhibit H – Transfer Report at "ASSIGNMENT/ARRIVAL". (Johnson Dec. ¶10, ¶15) | **Undisputed** |
| 17 | Deputy Peters was not present when Plaintiff removed his own eye on February 7, 2019. | Exhibit B – Morton Deposition Vol. II at 175:4-176:22, 178:1-21, 184:16-25. (Johnson Dec. ¶4, ¶15)<br><br>Exhibit C – Morton Deposition Vol. III at 14:15-15:20, 58:12-59:21, 60:23-1, 69:8-16. (Johnson Dec. ¶5, ¶15) | Undisputed |
| 18 | Deputy Peters had no way of knowing Plaintiff would remove his own eye on February 7, 2019. | Exhibit B – Morton Deposition Vol. II at 175:4-176:22, 178:1-21, 184:16-25. (Johnson Dec. ¶4, ¶15)<br><br>Exhibit C – Morton Deposition Vol. III at 14:15-15:20, 58:12-59:21, 60:23-1, 69:8-16. (Johnson Dec. ¶5, ¶15) | Undisputed |

| 19 | On January 13, 2019, Nurse Remus was working as a registered nurse at the WVDC. SUF No. 19. | Exhibit E – Remus Deposition at 40:2-10, 44:1-6, 44:14-20. (Johnson Dec. ¶7, ¶15) | Undisputed |
|---|---|---|---|
| 20 | On January 13, 2019, Nurse Remus saw Plaintiff because he attempted to attack another inmate at the WVDC. | (Johnson Dec. ¶7, ¶15) Exhibit B – Morton Deposition  Vol. II at 192:5-17. (Johnson Dec. ¶4, ¶15)<br><br>Exhibit I – Remus Assessment of Plaintiff at COSB01805 under "Notes". (Johnson Dec. ¶11, ¶15)<br><br>Exhibit E – Remus Deposition at 40:20-41:1-3. (Johnson Dec. ¶7, ¶15) | Undisputed |
| 21 | After the attempted attack Plaintiff told Nurse Remus that he was homicidal and not suicidal. | Exhibit I – Remus Assessment of Plaintiff at COSB01805 under "Notes". (Johnson Dec. ¶11, ¶15)<br><br>Exhibit E – Remus Deposition at 22:22-23:14, 40:20-41:1-3, 44:14-20, 52:2-6. (Johnson Dec. ¶7, ¶15) | Undisputed |

| 22 | Plaintiff expressly denied being suicidal. | Exhibit I – Remus Assessment of Plaintiff at COSB01805 under "Notes". (Johnson Dec. ¶11, ¶15)  Exhibit E – Remus Deposition at 22:22-23:14, 40:20-41:1-3,  44:14-20, 52:2-6. (Johnson Dec. ¶7, ¶15) Exhibit I – Remus Assessment of Plaintiff at COSB01805 under "Notes". (Johnson Dec. ¶11, ¶15) Exhibit E – Remus Deposition at 40:20-41:1-3, 44:14-20, 52:2-6. (Johnson Dec. ¶7, ¶15)  Exhibit G – Metzner Deposition at 166:23-167:3. (Johnson Dec. ¶9, ¶15) | Undisputed |

| 23 | Inmates who are "homicidal" at WVDC are placed on suicide watch for their safety and the safety of the other inmates. | Exhibit E – Remus Deposition at 40:11-14. (Johnson Dec. ¶7, ¶15) Exhibit F – Newton Deposition at 41:15-20. (Johnson Dec. ¶8, ¶15) Exhibit I – Remus Assessment of Plaintiff at COSB00583 under "Comments". (Johnson Dec. ¶11, ¶15) | Undisputed |
|---|---|---|---|
| 24 | On January 13, 2019, Nurse Remus placed Plaintiff on suicide watch for being homicidal. | Exhibit E – Remus Deposition at 40:11-14. (Johnson Dec. ¶7, ¶15) Exhibit I – Remus Assessment of Plaintiff at COSB00583 under "Comments" and COSB01805 under "Notes". (Johnson Dec. ¶11, ¶15) | Undisputed |
| 25 | On January 13, 2019, Nurse Remus referred Plaintiff to mental health staff for evaluation | Exhibit E- Remus Deposition at 41:9-18 (Johnson Dec. ¶7, 15) Exhibit I, Remus Assessment of Plaintiff at COSB00583 under "Classification Notification" and COSB0108 under "Notes" Johnson Decl ¶11, ¶15) | Undisputed |

| 26 | Nurse Remus had no interactions with Plaintiff after January 13, 2019. | (Johnson Dec. ¶11, ¶15) Exhibit E – Remus Deposition at 62:11-63:5. (Johnson Dec. ¶7, ¶15) | Undisputed |
|----|----|----|----|
| 27 | Nurse Remus had no control or influence over the conditions of Plaintiff's confinement while Plaintiff was at WVDC after January 13, 2019. | Exhibit E – Remus Deposition at 40:2-10, 44:1-6, 44:14-20, 62:11-63:5. (Johnson Dec. ¶7, ¶15) | Disputed- Remus did not believe he could make a psychological appointment.<br><br>Deposition of Remus Dilig 29:2-25; 30:1-25<br><br>Exhibit 4 of the Declaration of Sharon J. Brunner |

| 28 | Nurse Remus was not present when Plaintiff removed his own eye on February 7, 2019. | Exhibit B – Morton Deposition Vol. II at 175:4-176:22, 178:1-21, 184:16-25. (Johnson Dec. ¶4, ¶15)<br><br>Exhibit C – Morton Deposition Vol. III at 14:15-15:20, 58:12-59:21, 60:23-1, 69:8-16. (Johnson Dec. ¶5, ¶15)<br><br>Exhibit E – Remus Deposition at 62:11-63:5. (Johnson Dec. ¶7, ¶15) | Undisputed |

| 29 | Nurse Remus had no way of knowing Plaintiff would remove his own eye on February 7, 2019. | Exhibit B – Morton Deposition Vol. II at 175:4-176:22, 178:1-21, 184:16-25. (Johnson Dec. ¶4, ¶15)<br><br>Exhibit C – Morton Deposition Vol. III at 14:15-15:20, 58:12-59:21, 60:23-1, 69:8-16. (Johnson Dec. ¶5, ¶15)<br><br>Exhibit E – Remus Deposition at 62:11-63:5. (Johnson Dec. ¶7, ¶15) | Undisputed |
| --- | --- | --- | --- |
| 30 | Nurse Newton saw Plaintiff on 2/3/2019 at 10:30 a.m. and Plaintiff told her "good morning I'm doing ok". | ¶15) Exhibit K – 2/3/2019 – 2/7/2019 Plaintiff Cell Log Notes at COSB00378 under "Comment/Disposition". (Johnson Dec. ¶13, ¶15) | |

| 31 | Between 10:30 a.m. on 2/3/2019 and 2:46 a.m. on 2/7/2019 Plaintiff was seen approximately 20 times by numerous different nurses, none of which were Nurse Newton. | Exhibit K – 2/3/2019 – 2/7/2019 Plaintiff Cell Log Notes see COSB00288-COSB00378. (Johnson Dec. ¶13, ¶15) | Undisputed |
| 32 | Between 10:30 a.m. on 2/3/2019 and 2:46 a.m. on 2/7/2019, Plaintiff gave no indication that he was going to injure his eye. SUF No. 35. | Exhibit K – 2/3/2019 – 2/7/2019 Plaintiff Cell Log Notes see COSB00288-COSB00378. (Johnson Dec. ¶13, ¶15) | Undisputed |
| 33 | On February 7, 2019, Plaintiff removed his own eye at approximately 6:30 a.m. and was immediately taken to the emergency room. | Exhibit K – 2/3/2019 – 2/7/2019 Plaintiff Cell Log Notes at COSB00280 under "Comment/Disposition". (Johnson Dec. ¶13, ¶15)<br><br>Exhibit F – Newton Deposition at 14:19-23. (Johnson Dec. ¶8, ¶15) | Undisputed |

| 34 | Nurse Newton's did not start her shift on February 7, 2019 until 7:30 a.m., and was not present when Plaintiff removed his eye. | Exhibit B – Morton Deposition Vol. II at 175:4-176:22, 178:1-21, 184:16-25.<br><br>Exhibit C – Morton Deposition Vol. III at 14:15-15:20, 58:12- 59:21, 60:23-1, 69:8-16.<br><br>Exhibit F – Newton Deposition at 14:19-23.<br><br>Exhibit K – 2/3/2019 – 2/7/2019 Plaintiff Cell Log Notes at COSB00288-COSB00290. | Undisputed |

| 35 | Nurse Newton had no way of knowing Plaintiff was going to remove his eye. | 59:21, 60:23-1, 69:8-16.  Exhibit F – Newton Deposition at 14:19-23.   Exhibit K – 2/3/2019 – 2/7/2019 Plaintiff Cell Log Notes at  COSB00288-COSB00290. Exhibit B – Morton Deposition Vol. II at 175:4-176:22, 178:1-21, 184:16-25. (Johnson Dec. ¶4, ¶15)

Exhibit C – Morton Deposition Vol. III at 14:15-15:20, 58:12- 59:21, 60:23-1, 69:8-16.

Exhibit F – Newton Deposition at 14:19-23. (Johnson Dec. ¶8, ¶15) See SUF No. 30. See SUF No. 31. | Undisputed |
| 36 | Plaintiff was not suicidal on January 11, 2019 and had no intention to harm himself. | Exhibit B – Morton Deposition Vol. II at 157:24-156:1, 156:5-8, 156:15-24. (Johnson Dec. ¶4, ¶15) | Undisputed |
| 37 | Plaintiff testified he has not tried to commit suicide since he was released from Canyon Ridge on January 4, 2019. | Exhibit B – Morton Deposition Vol. II at 106:20-24. (Johnson Dec. ¶4, ¶15) | Undisputed |

| 38 | Plaintiff was aware that jail staff was checking on him every 15 minutes. | Exhibit B – Morton Deposition Vol. II at 175:4-176:22, 178:1-21, 184:16-25. (Johnson Dec. ¶4, ¶15) Exhibit C – Morton Deposition Vol. III at 14:15-15:20, 58:12-59:21, 60:23-1, 69:8-16. (Johnson Dec. ¶5, ¶15) | Undisputed |
|----|----|----|----|
| 39 | Plaintiff removed his eye in between the 15 minute checks. | Exhibit B – Morton Deposition Vol. II at 175:4-176:22, 178:1- 21, 184:16-25. (Johnson Dec. ¶4, ¶15)  Exhibit C – Morton Deposition Vol. III at 14:15-15:20, 58:12-59:21, 60:23-1, 69:8-16. (Johnson Dec. 5, ¶15) | Undisputed |

| 40 | Plaintiff removed his eye because the voices in his head told him to remove his eye for eating a cookie | (Johnson Dec. 5, ¶15) Exhibit B – Morton Deposition Vol. II at 175:4-176:22, 178:1-21, 184:16-25. (Johnson Dec. ¶4, ¶15)<br><br>Exhibit C – Morton Deposition Vol. III at 14:15-15:20, 58:12-59:21, 60:23-1, 69:8-16. (Johnson Dec. ¶5, ¶15) | Undisputed |
|----|-----|-----|-----|
| 41 | Plaintiff did not tell anyone the voices were telling him to hurt himself and he removed his eye in the spur of the moment. | (Johnson Dec. ¶5, ¶15) Exhibit B – Morton Deposition Vol. II at 175:4-176:22, 178:1-21, 184:16-25. (Johnson Dec. ¶4, ¶15) Exhibit C – Morton Deposition Vol. III at 14:15-15:20, 58:12-59:21, 60:23-1, 69:8-16. (Johnson Dec. ¶5, ¶15) | Undisputed |

| 42 | Plaintiff had been taken to the hospital several times before he removed his eye on February 7, 2019. | Exhibit B – Morton Deposition Vol. II at 203:15-25. (Johnson Dec. ¶4, ¶15)<br><br>Exhibit G – Metzner Deposition at 188:7-10. (Johnson Dec. ¶9, ¶15) | Undisputed |
| 43 | Plaintiff never told the doctors at the hospital that he needed treatment because the voices in his head told him not stay quiet at the hospital. | Exhibit B – Morton Deposition Vol. II at 204:1-11, 204:18-205:8. (Johnson Dec. ¶4, ¶15) | Undisputed |
| 44 | Plaintiff had been prescribed medications and had scheduled visits with psychiatrists and mental health personnel before removing his eye. | Exhibit G – Metzner Deposition at 145:10-21, 180:2-10, 187:24- 188:7-20. (Johnson Dec. ¶9, ¶15) | Undisputed |

| 45 | Plaintiff's own expert, Dr. Metzner, testified that he did not have any criticisms about the adequacy of the County's policies | Exhibit G – Metzner Deposition at 185:8-19. (Johnson Dec. ¶9, ¶15) | Undisputed in part and Disputed in part . Dr. Metnzer opined that his criticisms are the policies weren't implemented and appeared to be unknown to several clinicians at least.<br><br>Exhibit 7 of Sharon J. Brunner Deposition Transcript of Dr.Metzner 181:18-21 |
| --- | --- | --- | --- |

| 46 | Dr. Metzner found that Plaintiff's refusal to take his medications likely contributed to Plaintiff removing his eye. SUF No. 46 | Exhibit G – Metzner Deposition at 190:19-24. (Johnson Dec. ¶9, ¶15) | Disputed in part –<br><br>Dr. Metzner summarized that the lack of continuity of care, inadequate suicide risk assessments, lack of adequate treatment plan, delayed psychiatric evaluation contributed to the self inoculation<br><br>Exhibit 7 of Sharon J. Brunner Deposition Transcript of Dr.Metzner 198:19-25, 199:1-25, 200:1-5 |
| --- | --- | --- | --- |
| 47 | The WVDC staff did not involuntarily administer Plaintiff's medication and Dr. Metzner agreed with their decision. | Exhibit G – Metzner Deposition at 190:2-4, 190:12-15. (Johnsonmedication and Dr. Metzner agreed Dec. ¶9, ¶15) | Undisputed |
| 48 | Dr. Metzner found that the 15 minute checks did not cause Plaintiff to remove his eye | Exhibit G – Metzner Deposition at 198:13-18. (Johnson Dec. ¶9, ¶15) | Undisputed |

| 49 | Dr. Metzner never asserted that Plaintiff needed to be under constant observation. | Exhibit G – Metzner Deposition at 146:8-14, 166:5-18, 198:1-7. | Disputed

Based on the records from West Valley Detention Center which contained inadequate suicide risk assessments, he was unable to give an answer.

Exhibit 7 of Sharon J. Brunner Deposition Transcript of Dr.Metzner 198:1-7 |
| 50 | Dr. Metzner acknowledged that Plaintiff affirmatively denied having suicidal ideations and was seen by mental health providers before he removed his eye. | Exhibit G – Metzner Deposition at 166:23-25, 167:1-3. (Johnson Dec. ¶9, ¶15) | Undisputed |
| 51 | Plaintiff was transferred from High Desert Detention Center to West Valley Detention Center on January 11, 2019 at 9:40 a.m | Exhibit H – Transfer Report at" ASSIGNMENT/ARRIVAL". (Johnson Dec. ¶10, ¶15) | Undisputed |

| 52 | The only accommodation that Plaintiff asked for while in custody from January 11, 2019 – February 7, 2019 was for medication. | Exhibit C – Morton Deposition Vol. III at 24:11-28:22. (Johnson Dec. ¶5, ¶15) | Undisputed |
|----|----|----|----|
| 53 | Even without information from the officers, the jail staff of the HDDC and WVDC were able to immediately determine that Plaintiff was mentally ill health concerns and they specific medication he was taking. | Exhibit G – Metzner Deposition at 162:23-163:3, 177:4-22. (Johnson Dec. ¶9, ¶15) | Disputed – <br><br> Dr. Metzner was critical of the arresting deputies who failed to convey important information concerning Mr.Morton's stay at Victor Valley Hospital, Canyon Ridge Hospital, a new medical prescription, and other information received from Mr. Morton's mother on the 11th, which was vital to give Mr.Morton the medical care he needed. <br><br> Exhibit 7 of Sharon J. Brunner Deposition Transcript of Dr.Metzner 100:3-16 |

| 54 | Plaintiff stated that his Monell claims were based solely on the alleged conduct of Deputy Kabluyen and Deputy Peters in their interrogatory responses. | Exhibit G – Metzner Deposition at 162:23-163:3, 177:4-22. (Johnson Dec. ¶9, ¶15) | Disputed in part- Plaintiffs plead sufficient information in Second Amended Complaint Dkt.29 to put Defendants on notice on other monell theories. Additionally, Plaintiffs conducted a PMK deposition of the PMK most knowledgeable on West Valley Detention Center policies and procedures.  (See Exhibit 5) |
| --- | --- | --- | --- |
| 55 | Plaintiff never stated that his Monell claims were not based on any alleged conduct of Emily Newton or Remus Dilig | Exhibit L – Plaintiff Responses to County Interrogatories Set 1. (Johnson Dec. ¶14, ¶15) | Disputed – see Plaintiff's Response to 54. |
| 57 | Plaintiff never identified a supervisor to support their ratification theory for their Monell claim in their interrogatory responses. | Exhibit L – Plaintiff Responses to County Interrogatories Set 1. (Johnson Dec. ¶14, ¶15) | Undisputed. |

| 58 | Plaintiff's ADA and RA claims are based on the adequacy of his medical treatment | Exhibit L – Plaintiff Responses to County Interrogatories Set 1 at 40:11-23, 41:25-42:10, 43:21-44:14, 45:17-46:2. (Johnson Dec. ¶14, ¶15) | Undisputed. |

## PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

| Plaintiff's Undisputed Fact No | Fact | Supporting Evidence |
|---|---|---|
| | | |
| 1 | Deputy Kabluyen was employed by the San Bernardino County Sheriff's Department on January 11, 2019 and responded to Marie Adams 911 call for help for Mr. Morton | (Exh1 Decl. Sharon Brunner **transcript page number 15, lines 10-21 Kabluyen depo** |
| 2 | Deputy Peters was employed by the San Bernardino County Sheriff's Department on January 11, 2019 | Exh. Decl. Sharon Brunner **transcript of** |

| | | Peters page 16, lines 1-7) |
|---|---|---|
| 3 | San Bernardino's Sheriff's Dispatch information conveyed to Deputy Peters prior to arriving at the home of Marie Adams was that Mr. Morton was schizophrenic. | (Exh 2 Decl. Sharon Brunner, **transcript of Peters page 16, lines 11-20).** |
| 4 | Marie Adams informed Deputy Peters that Mr. Morton needed to be taken to a hospital for his mental illness | (Exh. 2 Decl. Sharon Brunner, **transcript of Peters, page 30, lines 3-23, page 33, lines 16-23**) |
| 5 | Deputy Peters also observed Mr. Morton's behavior during the initial encounter and described it as catatonic and visualized a cut on Mr. Morton's hand. | . (Exh. 2 Decl. Sharon Brunner, **transcript of Peters, page 16, lines 7-22**). |
| 6 | Deputy Peters failed to seek medical care for Mr. Morton though she testified that she had taken individuals in the past who | (Exh. 2 Decl. Sharon Brunner, |

| | | | |
|---|---|---|---|
| | | were a threat to themselves or others "5150" to hospitals such as Arrowhead Regional Medical Center and Loma Linda University Medical Center | **transcript of Peters, page 34, lines 3-25, page 35, lines 1-16).** |
| | 7 | Deputy Peters admitted having been trained on dealing with individuals who had mental illnesses including schizophrenia during the police academy. | (Exh. 2 Decl. Sharon Brunner, **transcript of Peters, page 40, lines 24-25, page 41, lines 1-9)** |
| | 8 | Deputy Peters despite being required by San Bernardino County Intake Policy to provide detailed information on an inmate at booking failed to sign the arresting officer section attesting to providing the information to the Intake Nurse | Nurse (Exh 2 **transcript of Peters, page 57, lines 16-25).** |
| | 9 | Deputy Peters failed to even recall the policy requiring this information | (Exh 2 Decl. Sharon Brunner, **transcript of Peters, page 56, lines** |

| | | 21-25, page 57, lines 9-15) |
|---|---|---|
| 10 | ).  Deputy Peters testified at her deposition that she had never been trained on the form "Receiving Screening" and was unfamiliar with the form and was not trained on the Arresting Deputy's requirements to complete the form. | (Exh. 2 Decl. Sharon Brunner, **transcript of Peters, page 59, line 24-25; page 60, lines 1-25; page 61, lines 1-25; page 61, lines 1-25; page 63, lines 1-6; page 63, lines 17-23;** ). |
| 11 | The arresting deputy would have been required to provide answers to the following questions to the Intake Nurse and sign the form attesting to the information: **"Is the arresting officer aware of any of the following?"** | (Exh. 3 Decl. Sharon Brunner, COSB00670-COSB00674) |

| 12 | Defendant Dilig Remus was a nurse employed by San Bernardino County on January 11, 2019, and was working as a nurse at WVDC and had contact with Mr. Morton at WVDC on January 13, 2019 | (Exh. 4 Decl. Sharon Brunner, transcript of Remus Dilig page 14, lines 1-14; page 19, lines 14-24; Page 21, lines 4-13.). |
|----|----|----|
| 13 | On January 13, 2019, Defendant Remus performed a suicide risk assessment on Mr. Morton as Mr. Morton was reported to homicidal as he was visualized to be chasing another inmate at the facility. | . (Exh. 4 Decl. Sharon Brunner, transcript of Remus Dilig, page 21, lines 4-19., page 22, lines 22-25; page 23, lines 1-25). |
| 14 | Mr. Morton was noted to be having hallucinations on January 13, 2019, as noted by Defendant Remus Dilig, | (Exh. 4 Decl. Sharon Brunner, transcript of Remus Dilig, page 27, lines 14-18.) |

| 15 | Defendant Remus checked "NO" for a psychiatric referral box on the form. Defendant Remus testified that he was not qualified or allowed to make such a referral as a nurse. | . (Exh. 4 Decl. Sharon Brunner, transcript of Remus Dilig, page 29, lines 2-25; page 30, lines 1-25; page 31, lines 1-25, page 32, lines 1-25) |
|---|---|---|
| 16 | His testimony and belief were later contradicted by the Person Most Knowledgeable for San Bernardino County Mental Health Policies and Procedures. | . (Exh 5 Decl. Sharon Brunner, transcript of Kristin Figueroa, page 32, lines 4-18) |
| 17 | Defendant Emily Newton was a nurse employed by San Bernardino County on February 03, 2019 and was working as a nurse at WVDC | (Excl. 6 Decl. Sharon Brunner, **transcript of Newton page 12, lines 2-24.)**. |
| | While in the safety cell Defendant Newton made a referral for Mr. Morton to the emergency room. | (Exh 6 Decl. Sharon Brunner, |

| | | |
|---|---|---|
| | | **transcript of Newton, page 46, lines, 15-25.)** |
| 18 | The referral was made for the emergency room as Mr. Morton has been observed on suicide watch running into pony wall and doing cartwheels headfirst into toilet three times. | (Exh. 6 Decl. Sharon Brunner, **transcript Newton, page 47, lines 1-7.)** |
| 19 | This was noted to be a suicide attempt by Defendant Newton and resulted in Mr. Morton suffering a laceration of his face and his left toe. | (Exh 6 Decl. Sharon Brunner, **transcript of Newton, page 54, lines 21-25; page 62, lines 1-4)** |
| 20 | Defendant Newton was aware that Mr. Morton suffered from a positive psychiatric history. | . (Exh. 6 Decl. Sharon Brunner, **transcript Newton, page 56, lines 22-25; page 57, lines 1-3).** |
| 21 | Defendant Newton was also aware that Mr. Morton had suffered a facial laceration previously while at WVDC | . (Exh6 Decl. Sharon Brunner, **transcript of Newton Page 59, lines 5-24)** |

| | | | |
|---|---|---|---|
| | | and was referred to a emergency room on January 30, 2019. | |
| | 22 | Defendant Newton failed to notify any doctors or a psychiatrist of these events involving Mr. Morton. | (Exh. 6  Decl. Sharon Brunner, **transcript of Newton, page 62, lines 9-20; page 63, lines 3-25; page 64, lines 1-4)** |