LAW OFFICE OF SHARON J. BRUNNER
Sharon J. Brunner, Esq. (SBN: 229931)
Email: sharonjbrunner@yahoo.com
14393 Park Avenue, Suite 100
Victorville, CA 92392
Tel: (760) 243-9997
Fax: (760) 843-8155

LAW OFFICE OF JAMES S. TERRELL
James S. Terrell, Esq. (SBN: 170409)
Email: jim@talktoterrell.com
15411 Anacapa Road
Victorville, CA 92392
Tel: (760) 951-5850
Fax: (760) 952-1085

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM SCHELL MORTON<br><br>            **Plaintiff,**<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO, DEPUTY KABLUYEN, DEPUTY PETERS, SERGEANT JIM EVANS AND DOES 1-10, INCLUSIVE.<br>            **Defendants**<br>            Defendants. | Case No. 5:21-cv-00052-JGB-SHK<br>[*Hon. Jesus Bernal*]<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' KIRKENDALL AND AZIZI MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |

# INTRODUCTION

# TABLE OF CONTENTS

*INTRODUCTION* ............................................................................................................. ii
*TABLE OF CONTENTS* .................................................................................................. ii
*MEMORANDUM OF POINTS AND AUTHORITIES* ..................................................... 1
*I.    INTRODUCTION AND BACKGROUND* ................................................................. 1
   *A.    Relevant Facts Regarding Defendant KIRKENDALL*............................................ 1
   *B.    Relevant Facts Regarding Defendant HAFIZULLAH AZIZI*................................. 2
*II.   LEGAL STANDARD* ................................................................................................. 3
*III.  ANALYSIS* ................................................................................................................ 4
*A.    Plaintiff's FOURTH Claim for Deliberate Indifference to A Substantial Risk of Harm Against Kirkendall and AZUZI Succeeds*................................................................... 4
     1.    Legal Standard .................................................................................................4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION AND BACKGROUND

### A.      Relevant Facts Regarding Defendant KIRKENDALL

Defendant Ely Kirkendall is a licensed clinical social worker, "LCSW". (Exh. 1 Decl. James Terrell, **Kirkendall transcript, 9:2-9).** Defendant Kirkendall was employed by Liberty Mutual a company that was contracted with the County of San Bernardino, at West Valley Detention Center (hereinafter "WVDC") (Exh.1 James Terrell, **Kirkendall transcript, 9:10-25.)** Between January 13, 2019, and January 20, 2019, Mr. Morton's condition continued to worsen as he was noted to be disorganized and responding to internal stimuli.  Paranoid delusions were also noted.  Mr. Morton refused to attend two social skills group sessions, refused medications and refused a psychiatric evaluation.  (Exh. 2 Decl. James Terrell, COSB00139).

On January 21, 2019, a progress suicide note follow-up was completed by Defendant Ely Kirkendall. Mr. Morton's major complaint was that he needed to be on his medication, Seroquel.  A history of numerous psychiatric hospitalizations were noted.  Mr. Morton was unable to provide specific dates regarding these hospitalizations.  Delusional thinking as well as auditory and command hallucinations were noted.  Mr. Morton's diagnosis was listed as schizophrenia. This assessment was conducted as Mr. Morton was on suicide watch.  (Exh. 3 Decl. James Terell, COSB-00517-COSB-00520, COSB00714-COSB00717).  It was revealed that Mr. Morton had refused the psychiatric evaluation on January 20, 2019, and noted to be presented with "psychosis" and "delusions".

Later on January 25, 2019, Defendant Kirkendall again saw Mr. Morton.  Mr. Morton was assessed by Defendant Kirkendall due to Mr. Morton exhibiting erratic behavior.  Mr. Morton was noted to be agitated, hostile and yelling profanities.  Mr. Morton was pacing.  Mr. Morton was noted by Defendant Kirkendall **"not actively**

**trying to harm himself, but do to escalation is kicking the door and running into the door."** (Exh. 4 Decl. James Terrell, COSB00137.)

Defendant Ely Kirkendall failed to act as a reasonable healthcare provider despite having access to all of Mr. Morton's medical records. Defendant Ely Kirkendall ignored the seriousness of Mr. Morton's condition and failed to take action knowing that this failure could lead to serious consequences. The facts that support the Plaintiff's contentions are that Mr. Morton's condition was deteriorating since his booking on January 11, 2019. Mr. Morton acknowledged being schizophrenic on January 11, 2019. Mr. Morton told High Desert Detention Center (hereinafter "HDDC") that he was taking Seroquel. Mr. Morton engaged in a self-harm incident on January 11, 2019, and was placed in a restraint chair at HDDC. Ms. Morton was noted to be homicidal on January 13, 2019, and exhibited other concerning behaviors. Mr. Morton refused an evaluation with a psychiatrist on January 20, 2019 which Dr. Metzner testified was too late at that time (Exh. 5 Decl. James Terrell, **Metzner transcript 177:24-25; 178:1-6.**). No psychotropic mediations were prescribed to Mr. Morton such as Seroquel as of January 22, 2019.

**B. Relevant Facts Regarding Defendant HAFIZULLAH AZIZI**

Dr. Azizi is a board certified in psychiatry and became board certified in 2016. (Exh. 6 Decl. James Terrell, **Aziz transcript, 10:11-15.**) Dr. Azizi was contracted with Liberty Health as an independent contractor since 2016 and accepted assignments under Liberty Health at West Valley Detention Center (hereinafter "WVDC"). (Exh.6 Decl. James Terrell, **Azizi transcript 10:22-25; 11:12:25; 12:1-8.**)

Dr. Azizi came into contact with Mr. Morton on January 28, 2019 due to self-harming behaviors with a history of suicidal attempts noted. Dr. Azizi prescribed Mr. Morton Seroquel. The plan was to continue to follow-up with Mr. Morton but the follow-up section on the form was left blank by Dr. Azizi so Mr. Morton never

received another follow-up examination with a psychiatrist and Mr. Morton continued to refuse his medications and due to no follow-up, Mr. Morton engaged in a self-harming incident on February 07, 2019 by gouging out his eye. (Exh. 6 Decl. James Terrell, **Azizi transcript 71:21:25; 84:8-25; 85:1-25;**

## II. <u>LEGAL STANDARD</u>

In ruling on a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*, 841 F.2d 872, 875 (9th Cir. 1987). Even where the basic facts are undisputed, summary judgment should be denied if reasonable minds could differ on the inferences to be drawn from those facts. *Adickes*, 398 U.S. at 158-59; *Lake Nacimiento Ranch Co.*, 841 F.2d at 875. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A factual dispute is "genuine" where "the evidence is such that a reasonable jury could return verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). All reasonable inferences must be drawn in the opposing party's favor both where the underlying facts are undisputed *and* where they are in controversy. Importantly, even entirely circumstantial evidence suffices to create a triable issue of fact. *Hopkins v. Andaya,* 958 F.2d 881, 888 (9th Cir. 1992).

The court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *United State v. One Parcel of Real Prop.,* 904 F.2d 487, 491-92 (9th Cir. 1990). Further, Rule 56 must be construed "with due regard" for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried by a jury. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). Summary adjudication is a drastic remedy and therefore the legal standard trial courts should act "with caution" in granting summary judgment. *Anderson,* 477 U.S. at 255.

### III.    ANALYSIS

A. **Plaintiff's FOURTH Claim for Deliberate Indifference to A Substantial Risk of Harm Against Kirkendall and AZUZI Succeeds**

**1.    Legal Standard**

Plaintiff's medical care claim is brought under the due process cause of the 14th Amendment an is evaluated under an objective deliberate indifference standard. Gordon v. *County of Orange,* 888 F.3d 1118, 1124-25 (9th Cir. 2018). He Plaintiff must show "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;(ii) those conditions put the plaintiff the at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate the risk, even though a reasonable official in in the circumstances would have appreciated the high degree of risk involves-making the consequences of the defendant's conduct obvious; and by not taking such measures, the defendant caused the plaintiff's injuries.   _

*Castro v. City of Los Angeles,* 833 F.3d 1060, 1071 (9th Cir.2016)

  Defendant Kirkendall was working at the San Bernardino Jail at the West Valley Detention Center and was a caregiver to the Plaintiff Mr. Morton. Defendant Kirkendall and was aware of Morton's medical records from the County revealed that he had not seen a psychiatrist and was physically hurting himself from the date of his incarceration. Defendant Kirkendall was aware that he (Morton) was deteriorating when she saw Morton on January 21, 2019. Morton's medical record revealed that he had been placed in the safety cell several times. The San Bernardino County policy required that individuals placed in the safety cell must see a psychiatrist every day.

    The record was clear that Morton needed to see a psychiatrist. The history of self harm and suicide attempts was alarming. Defendant Kirkendall made a decision to take no action. Although no psychiatrist had seen Morton, he had been diagnosed as suffering from schizophrenia, bi-polar and admitting to auditory hallucinations. The medical history available through electronic medical records, revealed that Morton had been physically hurting himself since his intake.

    Applying the *Castro* v. *City of Los Angeles,* (*Supra*), (i) Defendant Kirkendall made a decision to not take any action.(ii) the conditions known to Defendant Defendant Kirkendall about Morton included medical records. (iii) the defendant did not take reasonable available measures to abate the risk even though a reasonable official would have appreciated the high degree of risk involved making the consequences of the defendant obvious.

Defendant Kirkendall knew that Morton was suffering and could see that he had engaged in self harm and suicide attempts. Defendant Kirkendall could have sought immediate assistance and obtaining a psychiatrist or requesting that Morton be

examined by a medical doctor or a psychiatrist immediately. It was foreseeable that Morton would injure himself again.

Defendant Kirkendall did not take those measures and Morton injured himself thereafter. Not just with self-enucleation, he hurt him self several other times after the January 21, 2019, visit. Defendant Kirkendall decided to take no action. Shen personally knew the history of Mr. Morton, she had reviewed his medical record and knew about his severe mental illness. Defendant Kirkendall was aware that he been placed in suicide watch and he had been locked away in safety cells. Most important she could see that he needed help and he needed to be seen by a psychiatrist. Defendant Kirkendall knowing the history, knowing and appreciating the substantial risk of serious harm, decided her course of action. Defendant Kirkendall did not take reasonable steps to abate the risk knowing that Morton would continue to hurt himself and deteriorate.

Instead of getting immediate medical attention, Defendant Kirkendall made an appointment for Mr. Morton that was days away. Knowing Mr. Morton was having auditorium hallucinations and suffering from paranoid schizophrenia, physically hurting himself, KIRKENDALL simply made a future appointment.

Summary Judgment should be denied viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Adickes v. S.H. Kris's & Co.,* 398 U.S 144, 158-59 (1970); *Lake Nacimiento Ranch Co. V. San Luis Obispo Cnty.,* 841 F3d 872, 875 (9th Cir. 1987). Drawing all inferences in Plaintiff's favor, a jury could conclude that Defendant Kirkendall and Defendant Azizi each ignored warnings that Mr. Morton needed psychiatric care. In other words, a triable issue of fact remains as to whether the Individual Defendants were aware of a "serious acute medical condition" and "st[ood] idly by rather than responding with reasonable diligence to treat the condition." Id.

**DR. AZIZI**

On January 28, 2019, Dr. Azizi obtained the medical records to evaluate Mr. Morton who had not seen a physician or psychiatrist during this entire time of his incarceration. Mr. Morton was seen by Dr. Azizi for a psychiatric evaluation and prescribed medication which included Seroquel only on January 28, 2019 some seventeen days after Mr. Morton was booked at HDDC. At the time of the evaluation by Dr. Azizi, Mr. Morton was in a suicide cell and was on suicide watch. The records reveal that since Mr. Morton was arrested, he had been placed in a restraint chair, and had repeatedly placed on suicide watch and in safety cells. In addition, Dr. Azizi was aware that Mr. Morton had injured himself several times prior to seeing Dr. Azizi. The medical records indicate that Mr. Morton had entries that indicated that he was suicidal from several entries in the electronic medical record. Dr. Azizi had intended to follow-up with Mr. Morton after he prescribed Seroquel to Mr. Morton and after his evaluation on January 28, 2019, but failed to check the form for a follow-up so no follow-up occurred prior to Mr. Morton gouging out his eye on February 07, 2019.

Dr. Azizi was aware that Mr. Morton was in need of psychiatric medicines and that the medicine would take several days to assist or stabilize Mr. Morton who was having auditory hallucinations. Dr. Azizi diagnosed Mr. Morton as schizophrenic.

The Legal Standard under the 14th Amendment Deliberate Indifference. Dr. Azizi made an intentional decision with respect to the conditions under which Mr. Morton would receive care. Dr. Azizi plan was to continue follow-up but the form was left blank and there was no follow-up. The policy at WVDC is to see a psychiatrist daily for patients in a safety cell. Policy # 311 Basic Mental Health Service. #9 "Psychiatric visits for any patient a clinical seclusion including suicide watch and safety cell placement for MH purposes." Dr. Metzner opined that Morton did not receive daily psychiatric visits as required by their written policy. ( insert deposition)

Dr. Azizi made an intentional decision to not take any action. Daily checks on Mr. Morton by a psychiatrist should have been ordered, or Dr. Azizi should have transferred Mr. Morton to the County Mental Health Hospital, which could have prevented the foreseeable injuries. Dr. Azizi made an intentional decision to take no action with respect to the care Mr. Morton would receive.

Applying the *Castro* v. *City of Los Angeles,* (*Supra)*, (i) Azizi made a decision to not take any action. (ii) the conditions known to Azizi about Morton included medical records. (iii) the defendant did not take reasonable available measures to abate the risk even though a reasonable official would have appreciated the high degree of risk involved making the consequences of the defendant obvious.

Dr. Azizi knew that Mr. Morton was suffering and could see that he had engaged in self harm and suicide attempts. Dr. Azizi could have sought immediate assistance and obtaining a psychiatrist to make daily check ups or requesting that Mr. Morton be transferred to a psychiatric hospital immediately. It was foreseeable that Mr. Morton would injure himself again.

Drawing all inferences in Plaintiff's favor, a jury could conclude that Defendant Kirkendall and Defendant Dr. Azizi each ignored warnings that Mr. Morton needed psychiatric care. In other words, a triable issue of fact remains as to whether the Individual Defendants were aware of a "serious acute medical condition" and "st[ood] idly by rather than responding with reasonable diligence to treat the condition." Id.

**Fifth Cause of Action Failure to Monitor**

Defendants argue that Plaintiff's Fifth cause of action for failure to monitor fails. There are no cites or at least theory on a single statement it fails. Plaintiff disagrees. Each cause of action that occurred on separate dates and times is a valid

cause of action. The standard would be the same, Deliberate indifference. Plaintiff would amend the complaint to help clarify the Fifth Cause of Action.

**CONCLUSION:**

For the foregoing reasons, Plaintiff respectfully requests the Court deny the Defendants' Motion in its entirety.

DATED:   October 15, 2024      LAW OFFICES OF JAMES S. TERRELL

LAW OFFICES OF SHARON J. BRUNNER


By_____/s/ James S. Terrell

James S. Terrell

Sharon J. Brunner