1  DANIEL S. ROBERTS, Bar No. 205535
   droberts@colehuber.com
2  NICOLE R. ROGGEVEEN, Bar No. 252587
   nroggeveen@colehuber.com
3  JEREMIAH D. JOHNSON, Bar No. 293200
   jjohnson@colehuber.com
4  COLE HUBER LLP
   2855 E. Guasti Rd., Suite 402
5  Ontario, California 91761
   Telephone:  (909) 230-4209
6  Facsimile:   (909) 937-2034

7  Attorneys for Defendants San Bernardino,
   County, Deputy Jarred Kabluyen, Deputy
8  Kayla Peters, Remus Dilig (erroneously
   sued as Dilig Remus), and Emily Newton

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12

13  WILLIAM SCHELL MORTON,          | Case No. 5:21-cv-0052-JGB (SHKx)
                                    | Hon. Jesus G. Bernal
             Plaintiff,             |
14                                  |
        v.                          | **COUNTY DEFENDANTS' REPLY
15                                  | TO PLAINTIFF'S OPPOSITION TO
    COUNTY OF SAN BERNARDINO;       | COUNTY DEFENDANTS' MOTION
16  DEPUTY KABLUYEN;                | FOR SUMMARY JUDGMENT**
    DEPUTY PETERS;                  |
17  SERGEANT JIM EVANS; and         | [Filed concurrently herewith:
    DOES 1-10, inclusive,           |
18                                  |  (1)  Response to Pl's Stmt. Of
             Defendants.            |       Genuine Disputes and
19                                  |  (2)  Objections to Pl's Evidence.]
20                                  | Date:    November 4, 2024
                                    | Time:    10:00 a.m.
21                                  | Crtrm.  Riverside, Courtroom 1

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................. 1

II. THE CLAIMS AGAINST THE DEPUTIES FAIL ........................................... 1

    A. The Claims Against the Deputies Fail Under the Fourth Amendment Objective-Reasonableness Test ........................................ 1

    B. The Claims Against the Deputies Fail Under The Deliberate Indifference Standard .............................................................................. 2

    C. Plaintiff Fails to Overcome Intervening Causes Between the Deputies' Actions and Plaintiff's Injury ............................................. 3

    D. Plaintiff Fails to Overcome the Deputies' Qualified Immunity ............ 4

III. THE CLAIMS AGAINST NURSES DILIG AND NEWTON FAIL .............. 5

    A. Nurse Dilig Is Entitled To Summary Judgment .................................... 5

    B. Nurse Newton Is Entitled To Summary Judgment ................................ 6

    C. Plaintiff Fails to Overcome Intervening Causes As to Nurses Dilig and Newton .................................................................................. 7

    D. Plaintiff Fails to Overcome Qualified Immunity for Nurses Dilig and Newton .................................................................................. 8

    E. Plaintiff's Fifth Claim for Failure to Monitor Fails .............................. 8

IV. PLAINTIFF HAS FAILED TO ESTABLISH MONELL LIABILITY .......... 8

    A. Plaintiff Cannot Argue On Summary Judgment New Grounds For His Monell Claims Not Fairly Noticed in His Operative Complaint .............................................................................................. 9

    B. Plaintiff Failed to Disclose the Facts On Which He Now Relies for his New Monell Theories in Discovery ........................................... 11

    C. Plaintiff Offers No Competent Evidence in Support of His New Monell Theories .................................................................................... 12

    D. Plaintiff's New Theories Fail To Establish Monell Liability, Even Looking Past the Pleading, Disclosure, and Evidentiary Issues .................................................................................................... 13

        1. Plaintiff Fails to Establish a Failure To Train ............................ 13

        2. Plaintiff's Unconstitutional Policy and Custom Claims Fail ............................................................................................. 14

            (a) The Health/Intake Screening ........................................... 14

1

**TABLE OF CONTENTS (cont.)**

Page

(b)    The Custom of Failing to Transport Inmates In Need of Continuous Monitoring ........................................ 15

(c)    Continuity of Care ........................................................... 16

(d)    The Custom To Not Provide Daily Psychiatrist Visits ................................................................................ 16

V.    CONCLUSION .............................................................................. 17

CERTIFICATE OF COMPLIANCE ......................................................... 18

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COLE HUBER LLP
2855 E. GUASTI ROAD, SUITE 402
ONTARIO, CALIFORNIA 91761

1

# TABLE OF AUTHORITIES

2
<u>Page</u>

3
<u>CASES</u>

4
<u>Board of County Com'rs v. Brown</u>, 520 U.S. 397 (1997) .........................................13

5
<u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378 (1989)..............................................13

6
<u>City of Los Angeles v. Heller</u>, 475 U.S. 796 (1986) ...............................................8

7
<u>Conn v. City of Reno</u>, 591 F.3d 1081 (9th Cir. 2010)............................................2, 4

8
<u>Cousins v. Lockyer</u>, 568 F.3d 1063 (9th Cir. 2009)................................................17

9
<u>Dougherty v.City of Covina</u>, 654 F.3d 892 (9th Cir.2011) .................................13, 14

10
<u>Est. of Cornejo ex rel. Solis v. City of Los Angeles</u>, 618 F. App'x 917 (9th Cir. 2015)...........................................................................................1

11

12
<u>Est. of Silva v. City of San Diego</u>, No. 3:18-CV-2282-L-MSB, 2023 WL 3612324 (S.D. Cal. May 23, 2023) .......................................................4

13
<u>Finley v. Marathon Oil Co.</u>, 75 F.3d 1225 (7th Cir. 1996) .................................12

14
<u>Gordon v. Cnty. of Orange</u>, 888 F.3d 1118 (9th Cir. 2018)......................................3

15
<u>Gravelet- Blondin v. Shelton</u>, 728 F.3d 1086 (9th Cir. 2013)..................................14

16
<u>Harper v. City of Los Angeles</u>, 533 F.3d 1010 (9th Cir.2008) ...............................14

17
<u>Lockett v. Cty. of Los Angeles</u>, 977 F.3d 737 (9th Cir. 2020) ................................8

18
<u>Monzon v. City of Murrieta</u>, 978 F.3d 1150 (9th Cir. 2020) .................................2

19
<u>Pickern v. Pier 1 Imports (U.S.), Inc.</u>, 457 F.3d 963 (9th Cir. 2006)..................10, 11

20
<u>Rivas-Villegas v. Cortesluna</u>, 595 U.S. 1 (2021) .................................................4

21
<u>Sandoval v. Cnty. of San Diego</u>, 985 F.3d 657 (9th Cir. 2021) ...............................4

22

23
<u>Scott v. Jimenez</u>, Case No. CV 16-1152-JVS (KK), 2018 WL 1896308 (C.D. Cal. Feb. 22, 2018) ...........................................................................16

24
<u>Tatum v. City & County of San Francisco</u>, 441 F.3d 1090 (9th Cir. 2006)............1, 2

25
<u>Trishan Air, Inc. v. Fed. Ins. Co.</u>, 635 F.3d 422 (9th Cir. 2011)...............................9

<u>White v. Roper</u>, 901 F.2d 1501 (9th Cir.1990) ......................................................3, 7

26

27
<u>Yeti by Molly, Ltd. v. Deckers Outdoor Corp.</u>, 259 F.3d 1101, 1106 (9th Cir. 2001)...........................................................................................12

28

1

## TABLE OF AUTHORITIES (cont.)

**Page**

**RULES**

Fed R. Civ. P. 26.................................................................................12

Fed. R. Civ. P. 37..............................................................................12

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COLE HUBER LLP
2855 E. GUASTI ROAD, SUITE 402
ONTARIO, CALIFORNIA 91761

COLE HUBER LLP
2855 E. GUASTI ROAD, SUITE 402
ONTARIO, CALIFORNIA 91761

# I.    INTRODUCTION

In his Opposition to the County Defendants' summary-judgment motion, Plaintiff has conceded invalidity of his sixth, ninth, and tenth causes of action. Summary judgment should therefore be entered on those claims for Defendants. While Plaintiff contests the remaining claims (third, fourth, fifth, seventh, and eighth),[1] his Opposition papers fail to show a disputed issue of <u>material</u> fact on any of those claims.  For the reasons discussed below, Deputies Peters and Kabluyen, Nurses Dilig and Newton, and San Bernardino County submit they are entitled to summary judgment and respectfully request the Court so order.

# II.    THE CLAIMS AGAINST THE DEPUTIES FAIL

## A.    The Claims Against the Deputies Fail Under the Fourth Amendment Objective-Reasonableness Test

Plaintiff first argues that his third claim, for denial of medical care against Deputies Peters and Kabluyen, should be assessed under the Fourth Amendment "objective reasonableness" test, citing to <u>Tatum v. City & County of San Francisco</u>, 441 F.3d 1090 (9th Cir. 2006) and <u>Est. of Cornejo ex rel. Solis v. City of Los Angeles</u>, 618 F. App'x 917 (9th Cir. 2015).  Neither of these cases are applicable here, however, and Plaintiff's claims still fail under this standard.

The Ninth Circuit in <u>Est. of Cornejo</u> stated that

> In <u>Tatum v. City & County of San Francisco</u>, we found that suspects have a Fourth Amendment right to "objectively reasonable post-arrest [medical] care" until the end of the seizure. [citation omitted]. This means that officers must "seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary

---

[1]    Plaintiff also previously dismissed voluntarily his first and second claims for relief.  <u>See</u> Doc. No. 54.

COLE HUBER LLP
2855 E. GUASTI ROAD, SUITE 402
ONTARIO, CALIFORNIA 91761

1    medical help or by taking the injured detainee to a

2    hospital."

3    618 F. App'x at 920.  The Ninth Circuit has also held that "[o]fficers are not

4    compelled to administer 'what hindsight reveals to be the most effective medical

5    care for an arrested suspect.'"  Monzon v. City of Murrieta, 978 F.3d 1150, 1164

6    (9th Cir. 2020) (quoting Tatum, 441 F.3d at 1098).  Finally, in Tatum the Circuit

7    held "a police officer who promptly summons the necessary medical assistance has

8    acted reasonably for purposes of the Fourth Amendment."  441 F.3d at 1099.

9        In the present case, it is undisputed that paramedics were at Plaintiffs' house

10   along with the Deputies, and that they examined the Plaintiff there.  See Johnson

11   Decl. at Ex. "B" at 170:7-171:5 (ECF No. 55-1, ECF p. 35).  It is also undisputed

12   that Plaintiff was not injured while being arrested by the Deputies. See Pl.'s Resp. to

13   County's UF Nos. 4 and 13 (ECF No. 60-2 at ECF p. 3 lines 1-5, ECF p. 5 lines 11-

14   14).  Therefore, as a matter of law, the Deputies acted reasonably under the Fourth

15   Amendment objective reasonableness standard and are entitled to summary

16   judgment.

17   **B.    The Claims Against the Deputies Fail Under The Deliberate**

18   **Indifference Standard**

19       Plaintiff has also failed to show even a triable issue of fact that either Deputy

20   acted with deliberate indifference to his medical needs.  He attempts to do so by

21   analogizing this case to Conn v. City of Reno, 591 F.3d 1081, 1096 (9th Cir. 2010),

22   cert. granted, judgment vacated sub nom. City of Reno, Nev. v. Conn, 563 U.S. 915,

23   131 S. Ct. 1812, 179 L. Ed. 2d 769 (2011), and opinion reinstated, 658 F.3d 897 (9th

24   Cir. 2011).  Such attempt fails because Conn is not applicable to this case factually

25   or legally. First, the judgment in Conn was vacated for using the overturned

26   "subjective" analysis for deliberate indifference.  See 591 F.3d at 1096.

27   Additionally, Conn is factually distinguishable because it involved a person who

28   committed suicide within 24 hours of being booked into jail. Id. at 1053. Plaintiff

1  fails explain how <u>Conn</u> is applicable to this case, and fails to conduct any analysis of

2  the controlling deliberate indifference standard.

3      The applicable legal standard for deliberate indifference bears repeating. The

4  Plaintiff must show

5          (i) the defendant made an intentional decision with respect

6          to the conditions under which the plaintiff was confined;

7          (ii) those conditions put the plaintiff at substantial risk of

8          suffering serious harm; (iii) the defendant did not take

9          reasonable available measures to abate that risk, even

10         though a reasonable official in the circumstances would

11         have appreciated the high degree of risk involved—

12         making the consequences of the defendant's conduct

13         obvious; and (iv) by not taking such measures, the

14         defendant caused the plaintiff's injuries.

15  <u>Gordon v. Cnty. of Orange</u>, 888 F.3d 1118, 1124–25 (9th Cir. 2018).

16      Plaintiff fails to analyze of any of the elements in his Opposition.  Moreover,

17  he concedes that the Deputies had no contact with Plaintiff after January 11, 2019,

18  had no control over his confinement, and had no way of knowing that Plaintiff

19  would self-enucleate twenty-five (25) days later on February 7, 2019. <u>See</u> Pl.s'

20  Resp. to County SUF 4-9, 12, 13, 15-18 (ECF Doc. 60-2 at ECF p. 3:1-p.4:21; p.

21  5:7-14; p. 6:14-p.7:26).  Under these undisputed facts, Plaintiff cannot establish any

22  of the elements of deliberate indifference against either Deputy.  Therefore, the

23  Deputies are entitled to summary judgement on this claim.

24  **C.    Plaintiff Fails to Overcome Intervening Causes Between the**

25          **Deputies' Actions and Plaintiff's Injury**

26      Plaintiff also fails to address the test for proximate/intervening causes

27  discussed in <u>White v. Roper</u>, 901 F.2d 1501, 1505–06 (9th Cir.1990), and fails to

28  address the recent holding in <u>Est. of Silva v. City of San Diego</u>, No. 3:18-CV-2282-

COLE HUBER LLP
2855 E. GUASTI ROAD, SUITE 402
ONTARIO, CALIFORNIA 91761

1    L-MSB, 2023 WL 3612324, at *5 (S.D. Cal. May 23, 2023). In fact, Plaintiff

2    completely fails to address any of the intervening causes—most notably the 25

3    intervening days between the Deputies' last contact with Plaintiff and the injury of

4    which he complaints, the fact that Plaintiff was placed on suicide watch at the jail,

5    and Plaintiff's three intervening trips to the hospital—that break any connection of

6    causality between the Deputies' actions and Plaintiff's injury.  Instead, Plaintiff

7    once again cites to <u>Conn v. City of Reno</u>, which as discussed above is not legally or

8    factually applicable to this case. Therefore, the Deputies are entitled to summary

9    judgment.

10           **D.     Plaintiff Fails to Overcome the Deputies' Qualified Immunity**

11           Finally, Plaintiff has failed to identify clearly established law, "particularized

12    to the facts of this case," that would defeat the Deputies' claims of qualified

13    immunity.  Plaintiff's Opposition on this point ignores the repeated decisions of the

14    Supreme Court that the inquiry of whether the law was clearly established "must be

15    undertaken in light of the specific context of the case, not as a broad general

16    proposition," and that "to show a violation of clearly established law, [the plaintiff]

17    must identify a case that put [the officer] on notice that his specific conduct was

18    unlawful." <u>Rivas-Villegas v. Cortesluna</u>, 595 U.S. 1, 6 (2021).

19           Rather than identifying any sufficiently analogous case law from which

20    Deputies Kabluyen and Peters could know that their respective specific actions here

21    violated Plaintiff's constitutional rights, Plaintiff offers one case, <u>Sandoval v. Cnty.</u>

22    <u>of San Diego</u>, 985 F.3d 657, 664 (9th Cir. 2021).  However, <u>Sandoval</u> is from

23    2021—two years after this incident occurred—and involved a person who died of an

24    overdose within 24 hours of being arrested.  <u>See</u> 985 F.3d at 664.  Moreover,

25    Plaintiff applies <u>Sandoval</u> in the context of recognizing a clearly established rule

26    that "a prison official who is aware that an inmate is suffering from a serious acute

27    medical condition violates the Constitution when he stands idly by rather than

28    responding with reasonable diligence to treat the condition," then argues that "a jury

COLE HUBER LLP
2855 E. GUASTI ROAD, SUITE 402
ONTARIO, CALIFORNIA 91761

1    could conclude that Defendants Kabluyen and Peters each ignored warnings that

2    Plaintiff needed a hospital for psychiatric care." Pl.'s Oppn. at 12:13-18.  Plaintiff

3    offers no evidence, however, that he was "suffering from a serious acute medical

4    condition" at the time the Deputies were with him that required emergency transport

5    to a mental hospital.  At most, he argues (without citation to evidence) that his

6    mother showed Deputy Kabluyen papers that Plaintiff had been discharged from a

7    prior 5150 hold, Plaintiff had cut his hand after hitting a washing machine with a

8    hammer, was "talking gibberish" and was prescribed Seroquel, and Plaintiff's

9    mother's opinion that Plaintiff "was having a mental health crisis."  See Pl.'s Oppn.

10   at 7:25-8:6.  Even if Plaintiff had offered evidence in support of such an argument,

11   he offers no clearly established legal authority that failure to take someone to a

12   mental hospital under such circumstances violates the constitution.  Said another

13   way, Plaintiff offers no legal authority for the proposition that every person who has

14   a past history of psychiatric hospitalization and is prescribed anti-psychotic

15   medications needs to be taken to a mental hospital because he cut his hand and his

16   mom thinks he's having a mental health crisis.  Plaintiff offers no evidence of any

17   objective factors that would put any reasonable law enforcement officer on notice

18   that Plaintiff was suffering a serious acute mental health crisis, such that the

19   Constitution required he be taken immediately to a mental health hospital.

20   Therefore, the authority Plaintiff relies on to defeat qualified immunity is

21   inapplicable and summary judgment is appropriate based on that immunity.

22   **III.    THE CLAIMS AGAINST NURSES DILIG AND NEWTON FAIL**

23   **A.    Nurse Dilig Is Entitled To Summary Judgment**

24   Plaintiff concedes that Nurse Dilig only saw Plaintiff a single time on January

25   13, 2019, and that there was no way for Nurse Dilig to know that Plaintiff would

26   self-enucleate on February 7, 2019.  See Pl.'s Resp. to County SUF No. 26, 33, 41-

27   43 (ECF No. 60-2 at ECF p. 11:1-5, p. 14:13-21, p. 18:11-p. 19:12).  Therefore,

28   Plaintiff cannot establish at least three of the elements for deliberate indifference

COLE HUBER LLP
2855 E. GUASTI ROAD, SUITE 402
ONTARIO, CALIFORNIA 91761

against Defendant Dilig.  First and foremost, Plaintiff's Opposition fails to explain

how Nurse Dilig put Plaintiff at risk by placing him on suicide watch and for that

reason alone Nurse Dilig is entitled to summary judgment. Additionally, Plaintiff

concedes that it was not obvious, to a reasonable official in Nurse Dilig's position,

that Plaintiff would remove his eye three weeks later. Instead, Plaintiff's Opposition

references an unidentified form, and baldly accuses Nurse Dilig of failing to refer

Plaintiff to a psychiatrist.  Not only does Plaintiff fail to support his argument with

citation to any evidence, the evidence actually contradicts Plaintiff's argument that

he was not referred to a psychiatrist.  Nurse Dilig testified that when he puts an

inmate on suicide watch, while he does not make the appointment for a psychiatrist

visit himself, the inmate is "automatically placed on a queue and Mental Health

make the appointment for the psychologist [sic.]"  <u>See</u> Brunner Decl. Ex. "4," ECF

No. 60-1 at ECF p. 48, lines 2-5.  Moreover, Plaintiff concedes that he was

prescribed medication, saw a psychiatrist, and was taken to the hospital three times

before injuring his own eye.  <u>See</u> Pl.'s Resp. to County SUF Nos. 22-26, 28-44

(ECF No. 60-2 at ECF p. 9:1-p. 11:5, p. 12:1-p. 19:18).  Finally, Plaintiff fails to

show that any of Nurse Dilig's actions, or any alleged failure to act, caused Plaintiff

to remove his own eye. Therefore, Nurse Dilig is entitled to summary judgment.

### B.    Nurse Newton Is Entitled To Summary Judgment

Plaintiff's opposition fails to explain how Nurse Newton acted with deliberate

in difference in this case. Instead, Plaintiff alleges that Nurse Newton failed to

provide "information" to mental health staff, or a psychiatrist. However, Plaintiff

simultaneously concedes that Nurse Newton referred him to the hospital on

February 3, 2019, that Plaintiff never claimed to be suicidal, never told anyone that

the voices were telling him to hurt himself, and that he removed his eye without

warning.  <u>See</u> Pl.'s Resp. to County SUF Nos. 21-24, 30-33, 41-43 (ECF No. 60-2 at

p. 8:17 - p. 10:18, p. 13:15 - p. 14:21, p. 18:10 – p. 19:12).  It is also undisputed that

Nurse Newton was not even on shift when Plaintiff injured himself. <u>See</u> Pl.s Resp.

COLE HUBER LLP
2855 E. GUASTI ROAD, SUITE 402
ONTARIO, CALIFORNIA 91761

to County SUF No. 34 (ECF No. 60-2 at p. 15:1-14).  And Plaintiff concedes that

there was no way for Nurse Newton, or any reasonable official in her position, to

know that Plaintiff would remove his own eye under the circumstances.  See Pl.s'

Resp. to County SUF Nos. 41-43 (ECF No. 60-2 at p. 18:11 – p. 19:12).

Furthermore, Plaintiff cannot show that any of Nurse Newton's actions, or any

failure to act, caused Plaintiff to remove his own eye. Therefore, Nurse Newton is

entitled to summary judgment.

### C.    Plaintiff Fails to Overcome Intervening Causes As to Nurses Dilig and Newton

As with the Deputy Defendants discussed above, Plaintiff again fails to

address the test for proximate/intervening causes discussed in White v. Roper, 901

F.2d at 1505–06 as it applies to the Nurse Defendants.  And again, Plaintiff

completely failed to address any of the undisputed intervening causes – that he

refused to take his medications, that he never told anyone that the voices in his head

were telling him to remove his eye, and that he removed his own eye in the spur of

the moment. It is also undisputed that between 10:30 a.m. on February 3, 2019 and

2:46 a.m. on February 7, 2019, Plaintiff was seen approximately 20 times by

numerous different nurses, none of which were Nurse Newton or Nurse Dilig. See

Pl.'s Resp. to County SUF No. 31 (ECF No. 60-2 at p. 14:1-7). And it is undisputed

that during that time, Plaintiff gave no indication that he was going to injure his eye.

See Pl.'s Resp. to County SUF No. 32 (ECF No. 60-2 at p. 14:7-12). Instead, of

addressing the beforementioned, Plaintiff once again cited to Conn v. City of Reno,

and makes conclusory arguments that are unsupported by the evidentiary record.

Therefore, the Nurses are entitled to summary judgment because the Plaintiff fails to

overcome the identified intervening causes and the controlling legal authority.

COLE HUBER LLP
2855 E. GUASTI ROAD, SUITE 402
ONTARIO, CALIFORNIA 91761

1
2

    **D.**    **Plaintiff Fails to Overcome Qualified Immunity for Nurses Dilig and Newton**

3
4
5
6
7
8
9
10

    In response to Nurses Dilig and Newton's invocation of qualified immunity, Plaintiff repeats his argument on that point against Deputies Kabluyen and Peters. Plaintiff fails to identify any sufficiently analogous case law from which Nurses Dilig and Newton could have known that their specific actions here violated Plaintiff's constitutional rights. None of the cases Plaintiff cites are even remotely similar to the actions of Nurse Dilig or Nurse Newton or these factual circumstances. Therefore, qualified immunity for Nurses Dilig and Newton is appropriate.

11

    **E.**    **Plaintiff's Fifth Claim for Failure to Monitor Fails**

12
13
14
15
16

    Plaintiff's Opposition fails to provide any clarity to his fifth claim for "failure to monitor" against Nurses Dilig and Newton. Plaintiff fails to explain how this claim is any different than the deliberate-indifference claim against the Nurse Defendants discussed above.  Therefore, the claim fails because it has no legal or factual support.

17

**IV.**    **PLAINTIFF HAS FAILED TO ESTABLISH <u>MONELL</u> LIABILITY**

18
19
20
21
22

    Plaintiff fails in his Opposition to establish a constitutional violation for the reasons discussed above in relation to his Section 1983 claims. Therefore, Plaintiff's remaining <u>Monell</u> claims necessarily fail. <u>See</u> <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986); <u>Lockett v. Cty. of Los Angeles</u>, 977 F.3d 737, 741 (9th Cir. 2020).

23
24
25
26
27
28

    Even if there was a triable issue of fact on any constitutional violation, however, Plaintiff's <u>Monell</u> claims against the County still would fail for several reasons.  First, Plaintiff cannot avoid summary judgment by asserting a new basis for <u>Monell</u> liability not pled in his operative Complaint.  Second, the facts on which Plaintiff relies to establish the new "policies or customs" on which he now attempts to base <u>Monell</u> liability were not included in his discovery responses, and are not

COLE HUBER LLP
2855 E. GUASTI ROAD, SUITE 402
ONTARIO, CALIFORNIA 91761

supported by any competent evidence.  Finally, even if Plaintiff could get over those hurdles, he still fails to establish any of the alleges "policies or customs" caused a violation of his constitutional rights.

### A.    Plaintiff Cannot Argue On Summary Judgment New Grounds For His <u>Monell</u> Claims Not Fairly Noticed in His Operative Complaint

As anticipated, Plaintiff attempts in his Opposition salvage his remaining <u>Monell</u> claims by arguing new theories of liability and factual averments for the first time at summary judgment.  However, the Ninth Circuit has consistently held that "[t]he necessary factual averments are required with respect to each material element of the underlying legal theory. Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings." <u>Trishan Air, Inc. v. Fed. Ins. Co.</u>, 635 F.3d 422, 435 (9th Cir. 2011).

Plaintiff now "identifies four policies or customs which he contends give rise to the County's liability under <u>Monell</u>"

> "(1) failing to ensure that the deputies conducted a health screening at the jail intake;"
>
> "(2) Custom and practice of not transporting inmates to facility that can provide continuous monitoring;"
>
> "(3) Failure to provide continuity of care;" and
>
> "(4) Custom and practice to ignore San Bernardino policy that compels a daily psychiatrist examination for inmates confined to a safety cell."

Pl's Opp. at 18:24-28. Plaintiff claims that these new theories of liability are reflected in "paragraphs 38-52; and paragraph 159 (a)-(j), and lastly paragraph 16" of his Second Amended Complaint. <u>Id.</u> at 17:19-21. However, a review of Plaintiff's operative pleading reveals that the <u>Monell</u> allegations, as pled, relate to the actions of Deputies Kabluyen and Peters in detaining and arresting Plaintiff, not any claims of what happened in the jails.  <u>See</u> Second Am. Compl. (ECF No. 29) at ¶ 157.

COLE HUBER LLP
2855 E. GUASTI ROAD, SUITE 402
ONTARIO, CALIFORNIA 91761

Plaintiff's argument for refuge under Rule 8's "liberal pleading standard" was expressly rejected by the Ninth Circuit in <u>Pickern v. Pier 1 Imports (U.S.), Inc.</u>, 457 F.3d 963 (9th Cir. 2006) where the court held:

> In response to the motion for summary judgment, Pickern raised issues of ADA violations that went beyond a failure to provide a ramp. Pickern attempts to justify these new factual allegations as falling within the original complaint under Rule 8's liberal notice pleading standard. The district court did not err by holding that Pickern failed to provide the Appellees with adequate notice of these new allegations. Federal Rule of Civil Procedure 8(a)(2) requires that the allegations in the complaint 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quotation omitted). In her complaint, Pickern made it clear what her claim was when she alleged that the Store "contains architectural barriers that make it inaccessible." She did not, however, provide any notice concerning the grounds upon which she based this claim. Pickern's complaint included lists of barriers that she now characterizes as illustrative of the kinds of barriers a disabled person may confront. She alleged that the Appellees' failure to remove architectural barriers "may include, but is not limited to" these specific barriers. However, she did not allege that any of these barriers actually existed at the Store. Providing a list of hypothetical possible barriers is not a substitute for

COLE HUBER LLP
2855 E. GUASTI ROAD, SUITE 402
ONTARIO, CALIFORNIA 91761

investigating and alleging the grounds for a claim. Thus,
the complaint gave the Appellees no notice of the specific
factual allegations presented for the first time in Pickern's
opposition to summary judgment.

457 F.3d at 968-69.

Like Pickern, in response to summary judgment Plaintiff Morton has raised
Monell claims that go beyond the Monell theories alleged in his Complaint, which
rely solely on the conduct of Deputy Kabluyen and Deputy Peters during the arrest.
See Second Am. Compl. at ¶ 157.  In fact, Plaintiff's new "continuity of care"
theory cannot be found anywhere in his pleading. Similarly, Plaintiff's new
arguments regarding a custom and practice of not transporting patients to available
services, and ignoring a policy that compels a daily psychiatrist examination for
inmates confined to a safety cell, are equally not found anywhere in the complaint.
Additionally, Plaintiff's new argument that there was an "unconstitutional health
screening failure/intake screening process" was never properly noticed. As such,
like Pickern, Plaintiff here cannot present these new theories for the first time at
summary judgment.

Plaintiff fails even to argue the validity of his Monell claims as pled.  He
cannot avoid summary judgment by relying on new theories not pled.  Summary
judgment on Plaintiff's Monell claims is therefore appropriate.

**B.      Plaintiff Failed to Disclose the Facts On Which He Now Relies for
his New Monell Theories in Discovery**

Even if the four "policies or customs" listed above that Plaintiff now argues
give rise to Monell liability could be shoehorned into the allegations of his
Complaint, he still cannot use them to defeat summary judgment.  The County
specifically asked Plaintiff in discovery for all facts upon which he based his
allegations in regard to his Monell claims.  See County Interrog. to Pl. Nos. 7-15
(attached as Ex. "N" to Johnson Decl. filed Sept. 30, 2024, ECF No. 55-1 at ECF p.

COLE HUBER LLP
2855 E. GUASTI ROAD, SUITE 402
ONTARIO, CALIFORNIA 91761

258 line15 through 274:23).  Plaintiff did not disclose any of the "policies or customs" in response to those interrogatories.  Id.

Plaintiff may not defeat summary judgment by offering previously undisclosed facts for the first time in opposition to the motion.  Responses to interrogatories must be supplemented or corrected "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ."  Fed R. Civ. P. 26(e)(1)(A).  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  This Rule "gives teeth to [the disclosure] requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."  Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001).  The exclusionary sanction is "automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless."  Finley v. Marathon Oil Co., 75 F.3d 1225, 1230 (7th Cir. 1996); see also Yeti by Molly, 259 F.3d at 1106 (citing Advisory Committee Notes that describe exclusion as "self-executing" and "automatic" sanction).  Plaintiff cannot now use new facts, never previously disclosed, to defeat summary judgment.  Thus, not only is Plaintiff's Monell theory insufficient to defeat summary judgment because it is outside the scope his pleading, even if Plaintiff could overcome that bar, he still fails because he also cannot rely on facts not disclosed in discovery.

**C.    Plaintiff Offers No Competent Evidence in Support of His New Monell Theories**

In addition to the pleading and disclosure bars to Plaintiff's Monell arguments in his Opposition, Plaintiff also has failed to offer any competent evidence to establish the existence of the four "customs and policies" on which he now seeks to rely to establish Monell liability.  Although Plaintiff describes the alleged customs,

COLE HUBER LLP
2855 E. GUASTI ROAD, SUITE 402
ONTARIO, CALIFORNIA 91761

he does not cite any evidence from which he obtains those "facts."  At best, Plaintiff offers a general citation to his counsel's Declaration of "circumstances that lead to the death of Henry Simmons, Betty Lozano, Joshua Pitts, David Libranz and Billy Enyart."  Pl.'s Oppn. at 20:5-11.  Counsel's Declaration in that regard, however, lacks the necessary personal knowledge and foundation, and is therefore inadmissible.  See Obj. to Pl's Evidence, filed concurrently herewith.  Plaintiff fails to cite any admissible evidence in support of his <u>Monell</u> argument.  Because he has failed to support his arguments with admissible evidence, he has failed to show even a triable issue of fact as to this claim, and summary judgment is appropriate.

### D.    Plaintiff's New Theories Fail To Establish <u>Monell</u> Liability, Even Looking Past the Pleading, Disclosure, and Evidentiary Issues

Finally, even looking past Plaintiff's failure to plead his new <u>Monell</u> claims, failure to disclose in discovery the facts on which he attempts to base them, and failure to offer competent evidence in support of them on this motion, Plaintiff still fails establish the minimum requirements to proceed on his remaining <u>Monell</u> claims.

### 1.    Plaintiff Fails to Establish a Failure To Train

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 388 (1989). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  <u>Board of County Com'rs v. Brown</u>, 520 U.S. 397, 410 (1997). "A showing of simple or even heightened negligence will not suffice" to establish deliberate indifference. <u>Id.</u> at 407. "Failure to train may amount to a policy of 'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely." <u>Dougherty v.City of Covina</u>, 654 F.3d 892, 900 (9th Cir.2011) (citing <u>Harris</u>, 489 U.S. at 390).

COLE HUBER LLP
2855 E. GUASTI ROAD, SUITE 402
ONTARIO, CALIFORNIA 91761

Plaintiff's Opposition fails to identify any evidence to meet the high standard of "deliberate indifference" for a failure to train. Additionally, it fails to provide any evidence that Plaintiff's self-inflicted injury was the obvious consequence of any alleged failure to train.  See Pl.'s Resp. to County SUF Nos. 41-43 (ECF No. 60-2 at p. 18:11 – p. 19:12).  Most importantly, Plaintiff completely fails to establish the required connection between any training (or any lack of training), and Plaintiff's injuring his own eye.  See Pl.'s Resp. to County SUF Nos. 54, 55 (ECF No. 60-2 at p. .24:1-18).  Therefore, the County is entitled to summary judgment on any failure-to-train theory.

### 2.    Plaintiff's Unconstitutional Policy and Custom Claims Fail

To establish <u>Monell</u> liability based on an unconstitutional policy, practice or custom, Plaintiff must prove (1) he was deprived of a constitutional right, (2) the County had a policy, (3) that policy amounts to deliberate indifference to Plaintiff's rights, and (4) that policy is the moving force behind the constitutional violation. <u>See</u> <u>Dougherty</u>, 654 F.3d at 900. Plaintiff's opposition fails to establish any of these elements. Plaintiff fails to explain how any of the required elements are met for any of their new theories.

While the Plaintiff fails to establish any of the elements, the most glaring omission from Plaintiff's analysis is his failure to show that any alleged policy or custom was the "moving force" behind any alleged constitutional violation. "[T]he plaintiff must show both causation-in-fact and proximate causation." <u>Gravelet-Blondin v. Shelton</u>, 728 F.3d 1086, 1096 (9th Cir. 2013) (citing <u>Harper v. City of Los Angeles</u>, 533 F.3d 1010, 1026 (9th Cir.2008)). Therefore, as addressed further below, Plaintiff's Opposition fails to meet the necessary elements to proceed on his remaining <u>Monell</u> claims and the County is entitled to summary judgment.

### (a)    The Health/Intake Screening

As to Plaintiff's first alleged "policy or custom," which he identifies in the subheading as an "unconstitutional health screening failure/intake screening

COLE HUBER LLP
2855 E. GUASTI ROAD, SUITE 402
ONTARIO, CALIFORNIA 91761

1  process," Plaintiff fails to identify any "policy or custom" that caused (i.e., was the

2  moving force) behind his injury.  Rather, Plaintiff offers (without evidence) that the

3  jail <u>has</u> policies regarding nurse medical screening, and then proceeds to argue that

4  Deputy Peters did not follow them.  <u>See</u> Pl.s Oppn. at 19:16-20:3.  Plaintiff then

5  argues that there is "a pattern of preventable harm" but as discussed above, fails to

6  offer any admissible evidence in that regard.[2]  Even accepting Plaintiff's own

7  argument, the "policy" did not cause Plaintiff harm, but rather a single individual's

8  failure to follow it.  That is the exact situation that <u>Monell</u> counsels cannot give rise

9  to liability by the County.

10           **(b)      The Custom of Failing to Transport Inmates In Need**

11                        **of Continuous Monitoring**

12      Plaintiff describes the second "policy or custom" on which he now bases his

13  <u>Monell</u> claim as a custom of not transporting inmates in need of "continuous

14  monitoring or observation" to a facility where such care is available.  <u>See</u> Pl.'s

15  Oppn. at 20:24-28.  Plaintiff fails to offer any evidence of the existence of any such

16  "custom" of a failure to transport such inmates.  More importantly, however,

17  Plaintiff fails to show at all how any such "custom," assuming it did exist, caused

18  him any injury.  Plaintiff offers no evidence that he ever needed to be transferred to

19  a facility able to provide "constant observation."  Thus, he has failed to support his

20  own argument in this regard, and summary judgment is appropriate.  Moreover, the

21  evidence contradicts Plaintiff's argument on his point.  Not only is it undisputed that

22  Plaintiff was transported to the hospital several times, <u>see</u> Pl.'s Resp. to County SUF

23  No. 42 (ECF No. 60-2 at p. 19:1-7), but Plaintiff's own expert does not offer the

24  opinion that Plaintiff needed constant observation.  <u>See</u> Dep. of Jeffery Metzner,

25  _____

26       [2]      Plaintiff also argues that Deputy Peters was never trained on the
     process and was unfamiliar with it in her deposition, but beyond failing to cite any
27  evidence in support of such assertion, Plaintiff also fails to discuss why Deputy
     Peters would be trained on or familiar with a medical screening process conducted
28  by a nurse.

COLE HUBER LLP
2855 E. GUASTI ROAD, SUITE 402
ONTARIO, CALIFORNIA 91761

1   attached to Johnson Decl. at Ex. "G" at 166:5-11 (ECF No. 55-1 at ECF p. 137).

2   Thus, there is not only no evidence of a failure to transport inmates who need that

3   level of care, there is no evidence that Plaintiff needed that level of care.

4                  **(c)     Continuity of Care**

5         The third "policy or custom" Plaintiff asserts in opposition to summary

6   judgment is an alleged custom of not providing "continuity of care." First and

7   foremost, Plaintiff fails to even explain what "continuity of care" means, and fails to

8   cite to anything in the evidentiary record to support his newly alleged "continuity of

9   care" theory. Second, of the analysis in the Opposition of this theory consists of two

10  sentences, which ends with an incomplete quote and fails to explain how the

11  Plaintiff has made a showing for any of the elements necessary for a <u>Monell</u> claim.

12  <u>See</u> Pls' Opp. at 21:4-12. Therefore, Plaintiff's "continuity of care" theory fails and

13  the County is entitled to summary judgment.

14               **(d)     The Custom To Not Provide Daily Psychiatrist Visits**

15        Plaintiff's final "policy or custom" on which he now attempts to establish

16  <u>Monell</u> liability is a custom of ignoring a County policy requiring daily visits with a

17  psychiatrist for inmates in a safety cell. <u>See</u> Pl.'s Oppn. at 18:27-28. Plaintiff fails

18  in his Opposition, however, establish any such custom exists, or that it caused him

19  to suffer a constitutional injury. <u>Id.</u> at 21:16-27. For that reason alone, Plaintiff's

20  argument fails and summary judgment is appropriate. Even taking Plaintiff's

21  argument at face value, however, that there is a County policy requiring daily

22  psychiatrists visits, but the practice is to violate that policy, Plaintiff still would not

23  establish a constitutional violation. Showing a violation of the County's own policy

24  is not sufficient to establish a violation of the Constitution, which is of course what

25  Plaintiff must establish here. <u>See</u> <u>Scott v. Jimenez</u>, Case No. CV 16-1152-JVS

26  (KK), 2018 WL 1896308, at *8 (C.D. Cal. Feb. 22, 2018), report and

27  recommendation adopted, No. CV 16-1152-JVS (KK), 2018 WL 1896523 (C.D.

28  Cal. Apr. 18, 2018), aff'd, 748 F. App'x 169 (9th Cir. 2019) (citing <u>Cousins v.</u>

COLE HUBER LLP
2855 E. GUASTI ROAD, SUITE 402
ONTARIO, CALIFORNIA 91761

1   Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009)).  Plaintiff's forth "policy or custom,"

2   even if Plaintiff had provided some evidence to prove its existence (which he has

3   not) would not establish a constitutional violation.  Plaintiff has failed to establish

4   his Monell claim on any of the new policies or customs on which he now relies.

5   Summary judgment for the County on Plaintiff's Monell claim is appropriate.

6   **V.    CONCLUSION**

7         As discussed above, Plaintiff has previously dismissed his first and second

8   claims for relief and conceded his sixth, ninth, and tenth claims for relief.  All that

9   remains are his claims for deliberate indifference to his medical needs (third and

10  fourth and fifth claims) and his Monell claims (seventh and eighth claims).  Plaintiff

11  has failed to show a disputed issue of material fact on any of the remaining claims

12  against any of the County Defendants.  Therefore, Defendants San Bernardino

13  County, Deputy Jarred Kabluyen, Deputy Kayla Peters, Nurse Remus Dilig, and

14  Nurse Emily Newton are entitled to summary judgment, and respectfully request the

15  Court enter summary judgment on their behalf.

16

17  Dated:  October 22, 2024          Respectfully submitted,
                                       COLE HUBER LLP

18

19                                     By:        Daniel S. Roberts
                                            _____
20                                          Daniel S. Roberts
                                            Nicole R. Roggeveen
21                                          Jeremiah D. Johnson
                                            Attorneys for Defendants San Bernardino,
22                                          County, Deputy Jarred Kabluyen, Deputy
                                            Kayla Peters, Remus Dilig (erroneously
23                                          sued as Dilig Remus), and Emily Newton

24

25

26

27

28

COLE HUBER LLP
2855 E. GUASTI ROAD, SUITE 402
ONTARIO, CALIFORNIA 91761

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for the County Defendants, certifies that this brief contains 5,350 words, which  complies with the word limit of L.R. 11-6.1.

Dated:  October 22, 2024                    Respectfully submitted,

COLE HUBER LLP

By:  _____/s/ Daniel S. Roberts_____
          Daniel S. Roberts
          Jeremiah D. Johnson
          Attorneys for Defendants San Bernardino,
          County, Deputy Jarred Kabluyen, Deputy
          Kayla Peters, Remus Dilig (erroneously
          sued as Dilig Remus), and Emily Newton

COLE HUBER LLP
2855 E. GUASTI ROAD, SUITE 402
ONTARIO, CALIFORNIA 91761